MARY F. ALEXANDER, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, ROBERT L. HARPER et al., Respondents.

Jensen & Underwood and Philip P. Pendergrass for Peti-. tioner.

Everett A. Corten, Richard Swanson, Hanna & Brophy and F. A. Aycock for Respondents.

STONE, J.—This case is before us on a petition for writ of review of the "Opinion and Order Denying Reconsideration" of the Workmen's Compensation Appeals Board (hereinafter called W.C.A.B.). Just two witnesses testified at the hearing before the referee, petitioner, the widow of Jimmy Wayne Alexander, and her brother, Robert L. Harper, the decedent's employer and one of the respondents herein.

Jimmy Wayne Alexander was killed in an automobile accident occurring in the early morning hours of September 10, 1966, on Moffat Road near the City of Manteca. He had been employed by Harper's firm, Modesto Drywall Company, from 1965, when the company began operations, until his death in September 1966, except for a leave of absence during July and August 1966. when he worked for D. C. Vient in Las Vegas, Nevada. He was employed as foreman, entrusted with broad managerial duties, including bidding on jobs, and was furnished a gasoline credit card for use in the business and a company pickup truck which he was driving at the time of his injury and death.

For several months prior to the accident Modesto Drywall was in financial trouble, apparently because of difficulties in obtaining jobs; it finally went out of business in February 1967. Alexander told Harper he knew of a possibility of obtaining work on a large housing project in Seattle, Washington. They discussed the matter during the week preceding the accident and, after a talk on the evening of September 9, Alexander decided to go to Seattle to secure details on the job, hoping that Modesto Drywall could bid on the job and secure the work.

Mrs. Alexander testified that her husband came home on the evening of the 9th and told her he was going to Seattle to bid on the job, that he was to drive to San Francisco and there catch a plane which was to leave at 2:25 a.m. He had no plane

reservation as he had been told when he called San Francisco that none was necessary on the particular flight. Alexander left Modesto around 11:30 on the night of September 9, and was killed in an automobile accident shortly after midnight.

Respondents produced no evidence; they rely upon the cross-examination of Mrs. Alexander and her brother, Mr. Harper. The hearing referee found: "Employee died on September 10, 1966. Death was not caused by injury arising out of and occurring in the course of his employment."

Mrs. Alexander, the applicant, filed a petition with the W.C.A.B. requesting a reconsideration. Thereafter the W.C.A.B. filed its opinion and order denying reconsideration; that order is before this court on a writ of review.

■ Petitioner contends that since the only witnesses, the applicant and the employer, both testified that Alexander was on an errand for his employer at the time the accident occurred, and there was no testimony to the contrary, the W.C.A.B. must find accordingly. This argument overlooks the right of the trier of fact to draw inferences from circumstantial evidence. ■ Only in a case where there is no evidence from which the finder of fact can draw a contrary inference must the positive testimony of the witness be accepted as true. (*Blank* v. *Coffin*, 20 Cal.2d 457, 460-462 [126 P.2d 868].)

■ Unlike *Jones* v. *Workmen's Comp. Appeals Board*, 68 Cal.2d 476 [67 Cal.Rptr. 544, 439 P.2d 648], where the W.C.A.B. failed to consider the conflicting probative evidence, the decision, here, rests upon inferences drawn from the testimony of the two witnesses themselves. In its order and opinion, the W.C.A.B. cites the testimony of the employer, Mr. Harper, in support of an inference contrary to the testimony of both the decedent's widow and his employer. The opinion recites: "Defendant testified that his company went out of business in February 1967; that the company had no license to do business in the State of Washington and that no effort was made to make contracts in any other state. Defendant further testified that he did not know what the decedent's intentions were in regard to getting a job for himself in Washington."

Upon analysis, the import of petitioner's argument is that the W.C.A.B. exceeded its authority in giving greater weight to circumstantial evidence than to direct evidence. To preclude the W.C.A.B. from accepting circumstantial evidence in the face of positive testimony to the contrary would nullify the fundamental rule that where circumstantial evidence is in

conflict with the direct testimony of a witness, determination of the credibility of the witness and the weight to be given to his testimony lies exclusively within the province of the finder of fact. (*Bruce* v. *Ullery*, 58 Cal.2d 702, 711 [25 Cal.Rptr. 841, 375 P.2d 833].) █ It is well established that the trier of fact may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses. (*Nevarov* v. *Caldwell*, 161 Cal.App. 2d 762, 777 [327 P.2d 111].)

█ Petitioner argues, further, that if the W.C.A.B. disbelieved the testimony or parts of the testimony, it was required to make a finding as to what portions of the positive testimony were disbelieved. It was conceded at oral argument that the W.C.A.B. is not required to make a specific finding as to the credibility of either witness, but petitioner contends that if the trier of fact does not believe them it must find the facts related by the witnesses which it believes to be untrue.

However, negative findings need not be made when the W.C.A.B., as the trier of fact, specifies by its findings the evidence upon which its decision rests. "Its findings are usually limited to affirmative ultimate facts, which are all that are required." (1 Hanna, Cal. Law of Employee Injuries & Workmen's Compensation (2d ed. 1966) § 5.09(3); 2 Witkin, Cal. Procedure (1954) Trial, § 118, p. 1850.) Here, the W.C.A.B. specified the facts upon which it found that the injury and death did not arise out of and in the course and scope of decedent's employment. It must be implied that the W.C.A.B. did not believe testimony which supports the contrary result.

The question narrows to whether the circumstantial evidence upon which the W.C.A.B. rested its decision is substantial and will support the findings. █ We are mindful of the well established rule that the Labor Code must be liberally construed (Lab. Code, § 3202; *Shell Oil Co.* v. *Industrial Acc. Com.*, 199 Cal.App.2d 426, 431 [18 Cal.Rptr. 540]); nevertheless we cannot substitute our views of the evidence for those of the W.C.A.B. even though it appears from the record before us that the referee and the W.C.A.B. could have decided the case either way. As the Supreme Court has said in *Jones* v. *Workmen's Comp. Appeals Board, supra,* 68 Cal.2d at pages 478-479: "The rules to be applied by the courts on review of W.C.A.B. decisions are indeed well settled; its factual determinations cannot be disturbed unless they are

unsupported by substantial evidence. 'Under rules of construction by which we are bound, findings of the [W.C.A.B.] must be liberally interpreted in favor of sustaining an award and even if the findings are inadequate for uncertainty, they will be upheld if they can be made certain by reference to the record. Moreover, conflicts in the evidence must be resolved in favor of the findings of the [W.C.A.B.], and if there is any evidence in their support, findings will not be disturbed on appeal.' "

Respondent points to the following in support of the W.C.A.B. findings: Mr. Harper, the employer, is the brother of Mrs. Alexander, the petitioner and applicant; the trier of fact is the judge of his motive in testifying, as well as that of petitioner. Neither Mrs. Alexander nor Harper knew the name of the contractor in Seattle whom decedent allegedly was going to see; Harper was unable to give any details about the job other than that it was for 1,000 houses to be built over a three-year period. On cross-examination, when asked whether Mr. Alexander was going to Seattle to look for a job of his own, Harper admitted he was not sure exactly what Mr. Alexander's intentions were. The decedent had never before traveled any great distance to look for jobs for Modesto Drywall; the only inquiries he had made were in towns near Modesto. Harper had no contractor's license in Washington and he had had no business contact with anyone in the State of Washington; in fact he had never had a license or done business in any state other than California. Modesto Drywall lost over $8,000 in 1966 and Harper closed the business in February 1967; he had been considering going out of business for the last six months of 1966. Harper took a temporary job in Patterson, working on a special project for Hallmark Industries from July 14, 1966, to November 19, 1966, and on January 4, 1967, he went to work full time at Hallmark Industries.

The decision is affirmed.

Conley, P. J., and Gargano, J., concurred.