[Civ. No. 50276. Second Dist., Div. One. Dec. 12, 1979.]

WESTERN ELECTRIC COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
LAHOMA KAY SMITH, Respondents.

630

Counsel

Lawler, Felix & Hall, Edwin W. Duncan and Patrick K. O'Toole for Petitioner.

Brundage & Roseman, Steven Roseman, Charles L. Swezey, William B. Donohoe, Thomas J. McBirnie, Philip M. Miyamoto and Dexter W. Young for Respondents.

Opinion

HANSON, J.—

### Introduction

Petitioner Western Electric Company (hereinafter Western) seeks by way of a writ of review to annul, vacate and set aside an order and decision of the Workers' Compensation Appeals Board (hereinafter WCAB) following reconsideration whereby WCAB annulled the decision and order of the workers' compensation judge (hereinafter WCJ).

The WCJ had denied applicant Lahoma Kay Smith's (hereinafter applicant and/or Smith) petition seeking benefits pursuant to Labor Code section 132a (hereinafter section 132a) on the ground that Western refused to allow her to return to work because she had filed a workers' compensation claim.

## BACKGROUND

### I. PROCEEDINGS BEFORE THE WCJ

The evidence adduced at the hearing before the WCJ is substantially as follows:

Applicant Smith sustained a cumulative trauma injury to her neck during employment as a hand-set assembler for Western from January 2, 1973, through July 23, 1974. She last worked for Western on July 23, 1974. She first filed her application for adjudication of claim with the appeals board on January 8, 1974. She underwent a cervical fusion in September 1974. David V. Hubbell, M.D., the treating physician, released Smith to return to work with no restrictions on February 3, 1975. When she attempted to return to work on that date, J. E. Langsfeld, Western's personnel department chief, referred her to F. V. Shadid, M.D., Western's associate medical director, for examination. Western's policy is to have all employees returning to work from illness or injury to be medically examined in order to determine their work capacity.

After Dr. Shadid examined Smith, she went back to see Langsfeld. Langsfeld advised her that at that time she would not be allowed to return to work as Dr. Shadid had placed restrictions on her. Langsfeld explained that he would have to have a conference with Dr. Shadid to see what restrictions were to be placed upon her and then check with the shop to see if there was a job she could do.

On February 7, 1975, Smith obtained a note from Leonard J. Yamshon, M.D., her medical-legal examining physician, which stated that Smith "can return to her regular and customary work at this time." Dr. Yamshon had examined her on February 1, 1975, and in his medical report of that same date opined Smith's cervical problem was related to the repetitive nature of her work which required the "extensive use of the hands in handling materials and so forth." In his report of February

1, 1975, Dr. Yamshon also indicated that she had disability consisting of weakness of grip in the right hand and subjective complaints.[1]

Dr. Shadid advised Western that Smith should "be placed on [a] permanent restriction of no work requiring repetitive bending and rotation of [the] hand." Dr. Shadid made this recommendation because of the risk of future cervical injury to Smith.[2]

Paul Myers, who in February 1975 was the telephone repair department chief at Western's service center, was advised of Dr. Shadid's restrictions and then studied the job Smith had held on the hand-set assembly line. Myers observed that the job was physically impossible without moving the head from side to side and up and down. Myers conferred with John Moran, who was in charge of another department, to see if she could do a job in his department. Dr. Shadid accompanied Myers on a tour of the hand-set assembly area. Myers asserted he was unable to find a job for her within Dr. Shadid's restrictions. Langsfeld also had periodically toured various work areas with Dr. Shadid but was unsure if he did this in regard to Smith's disability.

Myers then discussed with Langsfeld the lack of availability of a position within Dr. Shadid's restrictions.

On February 10, 1975, Langsfeld and Smith had another meeting; also present for part of the meeting was Ray Fowler, the local union president. Langsfeld advised Smith she would not be permitted to return to work because of the restrictions Dr. Shadid placed on her. At that meeting, according to Smith, Langsfeld was given Dr. Yamshon's release of February 7, 1975, but Langsfeld said it still did not help. Smith asserts that when she asked Langsfeld if it was not for her workers' compensation claim whether she would be permitted to return to work that Langsfeld held up her appeals board application form and stated if it was not for that she would have been back at work. Smith

---

[1]Dr. Hubbell in a report dated April 4, 1975, observed that Smith alleged that "the repetitive trauma of the work caused her ruptured disc." Dr. Hubbell refused to take a position on the question of industrial causation stating: "I feel that whether this repetitive trauma is considered to be a cause of her ruptured disc or not is a legal question rather than a medical one."

[2]On June 10, 1975, Dr. Shadid discussed these restrictions with Dr. Hubbell who, according to Dr. Shadid, "did not feel the restrictions unreasonable under the circumstances."

then told Langsfeld the refusal to permit her to return to work was discrimination in violation of section 132a; in response Langsfeld said that he "didn't say that." Further, according to Smith, Langsfeld made no response to her when she argued that she could return to bench work which she had been reassigned to two months before she stopped working in July 1974.

Fowler's version of the meeting of February 10, 1975, is that when Smith asked Langsfeld if she was not to be returned to work because she filed a workers' compensation claim, Langsfeld picked up a stack of papers which included medical records and reports as well as Smith's appeals board application and stated that based upon all the information that she was too high a risk to return to work. Fowler later discussed Smith's situation with Moran and Moran's supervisor, Harry Sweeney; both told Fowler that Smith could not be allowed back to work since there was too high of a risk of her reinjuring herself. Fowler's suggestion of an independent third medical opinion was rejected by Western.

Langsfeld's version of the meeting was that when he held up Smith's file he meant that if not for her medical status, making return to work medically ill-advised, she would be permitted to return to work.

On May 28, 1975, the WCJ issued a workers' compensation award which found Smith had sustained a cumulative trauma injury to her neck as the result of her employment at Western. Among other benefits Smith was awarded 15½ percent permanent disability based upon permanent disability factors of "intermittent slight to moderate pain in the neck which at times radiates down to the right arm."

A union grievance proceeding commenced regarding Western's refusal to reemploy Smith; the grievance went through various steps which proved unsuccessful for Smith. The matter was finally referred to the national union's president for possible arbitration. In October 1975, the national president denied the authority to arbitrate, noting Smith did not have a "very strong case." The union president pointed out that while Dr. Hubbell states Smith can return to work "he does not state that she could perform any and all job tasks."

Smith, through new counsel, in September 1975, filed a petition for increased benefits pursuant to section 132a and Labor Code section 4553 (hereinafter section 4553).

The WCJ after hearing the testimony of Smith, Fowler, Myers, and Langsfeld, reviewing a deposition of Dr. Shadid, and considering the medical and other documentary evidence held there had been no improper conduct by Western under section 132a.

The WCJ stated in his Opinion on Decision:

"After applicant [Smith] recovered from surgery the employer did have meetings with the entire department where applicant was employed, has made a good faith attempt to place applicant in a job in her field; however, all jobs required certain head and neck motions and there was a high risk that an adjacent disc could be injured. The record indicates the extent of [Western's] attempt to place her in a job where she would not violate the restriction that the company doctor placed on applicant. [¶] Applicant filed a grievance against the company and was represented by Ray Fowler, the local President for the Communications Workers of America, Local 11595, and he appeared, or had the right to appear, at the various levels of grievance hearings; however, applicant failed in the four levels of the grievance hearings. [¶] The cross-examination of Mr. Fowler established that in his experience representing aggrieved workers he was not personally aware of any Western Electric Company employee being terminated or refused to be recalled back to work because of filing a Workers' Compensation claim. Mr. Langsfeld testified that the company doctor might return someone to work with extremely high permanent disability and they did have people with 30 to 40% permanent disability that return to work."

## II. Proceedings Before the WCAB

Applicant Smith thereafter filed a petition for reconsideration with the WCAB. The WCAB in a two-to-one panel decision granted reconsideration, found there was a section 132a violation and awarded a 50 percent increase in the workers' compensation award. The WCAB was of the opinion that neither the medical evidence nor the eventual appeals board disability rating indicated Smith was unable to do her job. The WCAB felt "Western's refusal to allow applicant [Smith] to return to work was unwarranted." The WCAB also relied heavily on Smith's versions of her meetings of February 3 and February 10, 1975, with Langsfeld and certain portions of Langsfeld's own testimony.

The dissenting member of the WCAB argued that the WCJ's findings of fact had not been given the great weight to which they were

entitled and that the evidence did not support a section 132a violation. The dissent also believed that the liberal construction of the Workers' Compensation Act mandated by Labor Code section 3202 (hereinafter section 3202) did not apply to section ·132a.[3]

## CONTENTIONS

On review before this court Western contends (1) that section 132a was unconstitutionally applied in this case as the WCAB failed to follow proper criminal procedure; and (2) that substantial evidence does not support the finding of the WCAB that Western discriminated against its employee Smith in contravention of section 132a and that the WCAB erred in reversing the finding of the WCJ that Western had not discriminated against Smith in violation of section 132a.

## DISCUSSION

### STATUTORY LAW

We observe that the sole issue before the WCAB on reconsideration was the question of the assessment of the increased compensation pursuant to sections 132a and 4553.

---

[3]The dissenting WCAB member stated in part: "I DISSENT. The record before the Board is insufficient upon which to reverse the workers' compensation judge's decision and to conclude that defendant has violated Labor Code § 132(a). The majority decision resulted from taking statements from the Summary of Evidence out of context. (Cf. majority opinion - p. 3, line 24). A decision of the Board may not be based upon any evidence whatsoever; on the contrary, a decision must be based upon an analysis of the evidence contained in the entire record, rather than upon the simple isolation of evidence which supports the Board and ignoring other relevant facts of record which rebut or explain that evidence. (*Le Vesque* v. *W.C.A.B.* (1970) 1 Cal.3d 627, 638-639, fn. 22; 35 CCC 16, 26, fn. 22).

"A thorough study of the entire Summary of Evidence is more than convincing that there is no § 132(a) violation. And although I would have preferred to review the complete transcripts of the testimony given, it is quite obvious that the majority did not give the judge's findings the 'great weight to which they were entitled'. (*Garza* v. *WCAB* (1970) 3 Cal.3d 312, 319; 35 CCC 500, 505.)

"The record indicates no past practice of § 132(a) misconduct on defendant's part. Discrimination against applicant also has not been shown. The work limitations as represented by the factors of disability which resulted in her permanent disability award clearly indicate a physical inability to perform any of the work which defendant had available.

"Labor Code § 3202, which states that the 'provisions of Division 4 and Division 5 of this code shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment' is not applicable to § 1.32(a) since the latter is contained in Division 1 of the Labor Code...."

Section 132a in pertinent part provides: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment.

"Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because the latter has filed or made known his intention to file an application with the appeals board, or because the employee has received a rating, award or settlement, or, because the employee testified or made known his intentions to testify in any manner relating to the appeals board, is guilty of a misdemeanor and subject to the provisions of Section 4553.[4]

"Any insurance carrier who advises, directs, or threatens an insured under penalty of cancellation or a raise in premium or for any other reason, to discharge an employee because the latter has filed or made known his intention to file an application with the appeals board, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and subject to the provisions of Section 4553.

"Proceedings under this section for increased compensation as provided in Section 4553 are to be instituted by filing an appropriate petition with the appeals board, but such proceedings may not be commenced more than one year from the discriminatory act or date of termination of the employee. The appeals board is vested with full power, authority, and jurisdiction to try and determine finally all the matters specified in this section subject only to judicial review."

PROCEEDINGS NON-CRIMINAL IN NATURE

■ Western's first contention that section 132a was unconstitutionally applied for failure to follow proper criminal procedures is without merit. Sections 132a and 4553 establish a civil/administrative remedy

---

[4]Section 4553 provides: "The amount of compensation otherwise recoverable shall be increased one-half where the employee is injured by reason of the serious and willful misconduct of any of the following:

"(a) The employer, or his managing representative.

"(b) If the employer is a partnership, on the part of one of the partners or a managing representative or general superintendent thereof.

"(c) If the employer is a corporation, on the part of an executive, managing officer, or general superintendent thereof.

"But such increase of award shall in no event exceed ten thousand dollars ($10,000); together with costs and expenses incident to procurement of such award, not to exceed two hundred fifty dollars ($250)."

by way of an award of increased compensation separate and apart from any criminal misdemeanor sanction and no criminal proceedings are involved. Thus, the finding of a misdemeanor violation of section 132a is not condition precedent to assertion of the civil/administrative remedy of section 132a. Correspondingly, the award of increased compensation under section 132a is not tantamount to finding Western guilty of a misdemeanor. Accordingly, neither the WCJ nor the WCAB was required to follow the rules of criminal procedure but correctly followed usual administrative procedures utilized in workers' compensation cases. (See *Cornell v. Reilly* (1954) 127 Cal.App.2d 178 [273 P.2d 572]; *Escamilla v. Marshburn Brothers* (1975) 48 Cal.App.3d 472 [121 Cal.Rptr. 891]; *Montalvo v. Zamora* (1970) 7 Cal.App.3d 69 [86 Cal.Rptr. 401].) Nor, contrary to Western's contention, was it entitled to a jury trial on Smith's petition for increased compensation under section 132a nor was Western deprived of any constitutional rights. The alleged violation of section 132a by Western is very precise and is not unconstitutionally vague for purpose of the application of the civil/administrative remedy of the section.

## WCJ DECISION

Inasmuch as this was an administrative determination of the civil/administrative provisions of section 132a, the usual "preponderance of the evidence" standard of proof utilized in administrative proceedings applies and not the standard of proof for criminal prosecutions as previously discussed. (See *Cornell, supra,* 127 Cal.App.2d 178; 2 Cal.Jur.3d, Administrative Law, §§ 189, 193; 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1979) § 5.07 [8].)[5]

## THE WCAB DECISION ON RECONSIDERATION

As previously noted, the proceedings below were of an administrative and not criminal nature. Thus, the WCAB in reviewing on reconsideration the decision of the WCJ (§§ 5900-5911) applies the same principles as utilized in passing upon any petition for reconsideration.

---

[5]Proof before the WCJ need not be to an exact certainty. (*Engels C. Min. Co. v. Industrial Acc. Com.* (1920) 183 Cal. 714, 717 [192 P. 845, 11 A.L.R. 785]; *San Francisco v. Industrial Acc. Com.* (1920) 183 Cal. 273, 283 [191 P. 26].) "All that is required is a degree of certainty on which men may reasonably act, and by which their affairs may reasonably be determined." (2 Cal.Jur.3d, Administrative Law, *supra,* § 189, p. 424, fn. 41.)

■ Thus, in passing upon Western's petition for reconsideration, the WCAB did not commit error per se by failing to review an actual transcript of the testimony. The WCAB on reconsideration reviewed the summaries of evidence prepared by the WCJ in accordance with established procedures in all workers' compensation matters. (§ 5313; WCAB Rules of Practice and Procedure (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2) § 10586.) The WCAB's procedure of reviewing the WCJ's summary of evidence in passing upon a petition for reconsideration, as opposed to obtaining a transcript, has been approved by case law. (*Allied Comp. Ins. Co.* v. *Ind. Acc. Com.* (1961) 57 Cal.2d 115, 119-121 [17 Cal.Rptr. 817, 367 P.2d 409].) Of course, had Western pointed to specific and material inadequacies or errors in the WCJ's summary of evidence, the WCAB would have been required on reconsideration to view a transcript of the testimony before the WCJ. (*Allied Comp. Ins. Co., supra.*) In the instant case, however, Western makes no contention that the WCJ's summary of evidence was in any way materially inadequate or incorrect.

■,■ In *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978], the Supreme Court set forth the four elementary principles for decisions of the WCAB on reconsideration:

"*First.* 'Although the employee bears the burden of proving that his injury was sustained in the course of his employment, the established legislative policy is that the Workmen's Compensation Act must be liberally construed in the employee's favor (Lab. Code, § 3202), and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee. (*Lundberg* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 436, 439. . . .) *This rule is binding upon the board and this court.* (*Id.* at p. 439.)' (*Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].) (Italics added.)

"*Second.* '[A]lthough the board is empowered to resolve conflicts in the evidence [citations], to make its own credibility determinations [citations], and upon reconsideration to reject the findings of the referee and enter its own findings on the basis of its review of the record [citations], nevertheless, any award, order or decision of the board must be supported by substantial evidence *in the light of the entire record* (Lab.

Code, § 5952; *LeVesque v. Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 635 . . .).' (*Garza v. Workmen's Comp. App. Bd., supra,* 3 Cal.3d 312, 317.) (Italics added.) The foregoing standard is not met "by simply isolating evidence which supports the board and ignoring other relevant facts of record which rebut or explain that evidence.' (*Id.* at p. 317.)

"*Third.* 'As a general rule, the board *"must accept as true the intended meaning of* [*evidence*] *both uncontradicted and unimpeached."* (*LeVesque v. Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 639; *McAllister v. Workmen's Comp. App. Bd., supra,* 69 Cal.2d 408, 413 [71 Cal.Rptr. 697, 445 P.2d 313]; see *Wilhelm v. Workmen's Comp. App. Bd., supra,* 255 Cal.App.2d 30, 33 [62 Cal.Rptr. 829].)' (*Garza v. Workmen's Comp. App. Bd., supra,* 3 Cal.3d 312, 317, 318.) (Italics added.)

"*Fourth.* When a referee's finding of compensable injury is supported by solid, credible evidence, it is to be accorded great weight by the Board and should be rejected only on the basis of contrary evidence of considerable substantiality. (*Garza v. Workmen's Comp. App. Bd., supra,* 3 Cal.3d 312, 318-319; *Greenberg v. Workmen's Comp. Appeals Bd.* (1974) 37 Cal.App.3d 792, 798-799 [112 Cal.Rptr. 626].)"[6]

█ With regard to the first principles quoted above we observe that there had previously been some question as to whether the liberal construction of the workers' compensation laws mandated by section 3202 applied to section 132a (see *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230, fn. 6 [110 Cal.Rptr. 144, 514 P.2d 1224]). The Supreme Court in *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658 [150 Cal.Rtpr. 250, 586 P.2d 564], resolved the question when the court expressly applies section 3202 to section 132a. (*Id.,* at p. 668, see also, *State Compensation Ins. Fund. v. Workers' Comp. Appeals Bd.* (*Slotten*) (1979) 88 Cal.App.3d 43, 55-56 [152 Cal.Rptr. 153].)

Without question, the second and third principles of *Lamb* quoted above apply to the WCAB's review of the decision of the WCJ in the instant case.

---

[6]In 1975 the WCAB adopted the title "workers' compensation judge" in lieu of "referee". (WCAB Rules of Practice and Procedure (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2) § 10302.)

We focus on the fourth *Lamb* principle which provides that where a factual finding of the WCJ "is supported by solid, credible evidence, it is to be accorded great weight by the Board and should be rejected only on the basis of contrary evidence of considerable substantiality." (*Lamb, supra,* 11 Cal.3d at p. 281.) The fourth principle originates in *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 318-319 [90 Cal.Rptr. 312, 475 P.2d 451]. *Garza* quotes from *In re Branch* (1969) 70 Cal.2d 200, 203, footnote 1 [74 Cal.Rptr. 238, 449 P.2d 174], which dealt with review of referee's findings in habeas corpus cases, as follows:

"'A referee's findings of fact are, of course, not binding on this court, and we may reach a different conclusion on an independent examination of the evidence produced at the hearing he conducts even where the evidence is conflicting. [Citation.] However, where the findings are supported by "ample, credible evidence" [citation] or "substantial evidence" [citation] they are entitled to great weight [citations] because of the referee's "opportunity to observe the demeanor of the witnesses and weigh their statements in connection with their manner on the stand...." [Citation.]'" (*Garza, supra,* at p. 319.)

Thus, the factual findings of the WCJ were entitled to great weight by the WCAB if supported by substantial evidence and could be disregarded by the WCAB only on the basis of contrary evidence of considerable substantiality. Of course, the WCAB is not bound by the WCJ's conclusions of law.

APPELLATE REVIEW

. "Our review of an award by the Workers' Compensation Appeals Board is confined to the determination whether, under applicable principles of law, the award is supported by substantial evidence. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432]; Lab. Code, § 5952, subd. (d).) As Labor Code section 5953 provides, 'The findings and conclusions of the appeals board on questions of fact are conclusive and final and are not subject to review. Such questions of fact shall include ultimate facts and the findings and conclusions of the appeals board.' Thus if the board's findings '"are supported by inferences which may fairly be drawn from evidence even though the evidence is susceptible of oppos-

ing inferences, the reviewing court will not disturb the award."' (*Riskin v. Ind. Acc. Com.* (1943) 23 Cal.2d 248, 254 [144 P.2d 16].)" (*Judson Steel, supra,* 22 Cal.3d at p. 664.)

The "substantial evidence test" only applies to the WCAB's factual findings. (*Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 158, 162 [151 Cal.Rptr. 666, 588 P.2d 806]; *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864-865 [101 Cal.Rptr. 105, 495 P.2d 433].) The credibility of witnesses, the persuasiveness or weight of the evidence, and the resolving of conflicting inferences, are questions of fact. (*Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 115 [251 P.2d 955].) ■ This reviewing court, of course, is not bound by the WCAB's conclusions on questions of law. (*Dimmig, supra; City of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1979) 91 Cal.App.3d 759, 763 [154 Cal.Rptr. 379].) Moreover, what minimum factual elements must be proven in order to constitute a violation of section 132a in order to impose its civil/administrative remedy and the sufficiency of the evidence to that end are questions of law. (See *Mercer-Fraser Co., supra,* 40 Cal.2d at p. 115.)

THE CASE AT BENCH

Section 132a expresses the broad policy that employees who have sustained compensable industrial injuries not be discriminated against. (*Judson Steel Corp.* v. *Worker's Comp. Appeals Bd., supra,* 22 Cal.3d at pp. 665-666.) *Judson Steel* establishes that section 132a prohibits the employer from arbitrarily taking action against his employee on the sole basis that the employee sustained an industrial injury. (*Id.,* at p. 669.) Here, however, the WCAB found Western to have violated the specific prohibition in section 132a against the employer "discharg[ing], or threaten[ing] to discharge, or in any other manner discriminat[ing] against any employee because the latter has filed or made known his intention to file an application with the appeals board, or because the employee has received a rating, award or settlement."

■ Western asserts it discharged Smith as there was no work available which she could perform without the risk of either reinjury or further injury. If this is the true reason Western refused to allow Smith

to return to work, then there was no section 132a violation. "Section 132a does not compel an employer to ignore the realities of doing business by 'reemploying' unqualified employees or employees for whom positions are no longer available." (*Judson Steel, supra,* 22 Cal.3d at p. 667.) However, if Smith can demonstrate she could have returned to work and performed her job without risk of reinjury or further injury to herself, then the Board could properly draw an inference of prohibited discriminatory action by Western unless Western can otherwise demonstrate to the contrary. (See *Judson Steel, supra,* at p. 665.)

In reviewing the WCAB's decision on reconsideration, it can be seen that it has merely isolated certain parts of the record that support its decision. The WCAB stated that Langsfeld admitted to Smith that if it were not for the workers' compensation case she could return to work. This, of course, is taking only part of Langsfeld's testimony and ignores Fowler's testimony, both of which the WCJ, who heard the testimony and viewed the witnesses, found credible. Langsfeld explained that what he indicated, or what he meant to indicate, was that it was because of the available medical evidence that she was not permitted to return to work. Clearly, the WCAB while isolating that portion of the record which supports its view improperly ignored that part of the record where it explains this testimony. Further, the WCAB has failed to give the findings of fact of the WCJ the "great weight" to which they were entitled and has failed to point to evidence of "considerable substantiality" contrary to the WCJ's factual findings.

CONCLUSION

We conclude the WCAB did not err in failing to follow the rules of criminal procedure and did properly apply the administrative procedures customarily utilized before the appeals board and in doing so did not deprive Western of any constitutional rights.

However, we further conclude that the WCAB failed to review the entire record and has not pointed to evidence of "considerable substantiality" supporting its reversal of the WCJ as it was required to do.

## DISPOSITION

The WCAB's decision is annulled and the matter is remanded to the WCAB for further proceedings consistent with the court's opinion herein.[7]

Lillie, Acting P. J., and Ackerman, J.,* concurred.

---

[7]We note that Western failed to file any report from Dr. Shadid at the time of the appeals board litigation over the issues of injury and permanent disability. (See WCAB Rules of Practice and Procedure (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2) §§ 10608, 10615, 10622.)

We further note that at the time of the proceedings below the WCAB was under the impression that the mandated liberal construction of the workers' compensation laws in favor of the injured worker pursuant to section 3202 did not apply to section 132a. *Judson Steel* holds section 3202 does apply to section 132a. (*Judson Steel, supra,* 22 Cal.3d at p. 668.)

*Assigned by the Chairperson of the Judicial Council.