[Civ. Nos. 57205, 57836. Second Dist., Div. Five. Jan. 29, 1981.]

LOS ANGELES UNIFIED SCHOOL DISTRICT et al.,
Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
MARY HENRY, Respondents.

COUNSEL

Zonni, Ginocchio & Taylor, George Woolverton, James J. Vonk, Richard A. Krimen, Arthur Hershenson, Frank Evans, Robert A. La Porta, Michael J. Brodie and Fernando Da Silva for Petitioners.

Geffner & Satzman and Robert Goldstein for Respondents.

OPINION

ASHBY, J.—Petitioners Los Angeles Unified School District (L.A. School District) and State Compensation Insurance Fund (State Fund) seek review of the finding by respondent Workers' Compensation

Appeals Board (WCAB) that respondent Mary Henry (hereinafter also applicant) sustained cumulative injury[1] to her heart arising out of and occurring in the course of her employment as a teacher for L.A. School District. For the reasons stated herein, we annul the WCAB's finding of industrial cumulative injury.

I

Applicant was employed by L.A. School District as a part-time PBX operator teacher from 1970 until July 1976 at the North Valley Occupational Center. State Fund was the workers' compensation insurer for L.A. School District up through June 30, 1976; thereafter, L.A. School District was permissibly self-insured.

Applicant alleges that the stress of her employment resulted in an industrial cumulative injury to her heart. On December 14, 1975, while at home applicant sustained a myocardial infarction. She was hospitalized and was off work until April 1, 1976, when she returned to work for L.A. School District. She last worked on July 12, 1976, when she began to feel ill and was again hospitalized commencing July 13, 1976. The diagnosis at the time of this second hospitalization was arteriosclerotic heart disease with a possible second heart attack having occurred. It is here not disputed that applicant has heart disease which is disabling. The sole question is the occurrence of an industrial cumulative injury.

The workers' compensation judge found that applicant had not sustained cumulative injury to her heart as the result of her employment at L.A. School District. The judge did, however, find that applicant sustained a specific industrial injury (*ante*, fn. 1) to her heart on July 13, 1976, which resulted in approximately six weeks of temporary disability. The judge found that this specific injury of July 13, 1976, did not result in any permanent disability. Medical treatment payable by L.A. School District for this specific injury was limited by the judge to that which was directly related to the injury of July 13, 1976; the judge specifically found that additional medical treatment being related to this injury had not been established.

---

[1]"An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment...." (Lab. Code, § 3208.1.)

Upon applicant's petition for reconsideration, the WCAB granted reconsideration. The WCAB rescinded the judge's finding on the question of industrial cumulative injury and to the contrary found that applicant had indeed sustained cumulative injury to her heart as the result of her employment.[2] With respect to the cumulative injury the WCAB awarded applicant temporary disability benefits, reimbursement for self-procured medical treatment, and further medical treatment; the issues of permanent disability and apportionment thereof were deferred by the WCAB for further proceedings at the hearing level. The judge's finding of a specific injury on July 13, 1976, however, was left undisturbed by the WCAB.

In reaching his decision, the workers' compensation judge was confronted with a record wherein the lay evidence was in conflict over whether applicant had in fact been subject to stress during her employment and medical evidence not in complete agreement on the question of an industrial relationship to applicant's heart condition.

Rendering a medical evaluation on behalf of State Fund was Frank Dituri, M.D., who, per his report dated March 23, 1977, found "no evidence" that applicant "had any continuous and unremitting stress and strain in her occupation of the type that would aggravate or accelerate the process of coronary artery disease leading to acute myocardial infarction" in December 1975. "Fundamentally," it was Dr. Dituri's opinion that "preexisting and nonindustrial factors would explain her entire disability." Dr. Dituri did acknowledge that hospitalization in July 1976 occurred when applicant "began to hyperventilate" and "It is very probable that she became emotionally upset at school that day and that this is why she became ill and required the hospitalization." However, Dr. Dituri maintained that the incident of July 1976 produced no further permanent disability.

Reporting on behalf of L.A. School District was Alvin Markovitz, M.D. According to Dr. Markovitz's report dated July 26, 1977, appli-

---

[2]Specifically the WCAB found that applicant had technically sustained two separate cumulative injuries. The first was a cumulative injury during applicant's employment from 1970 through December 12, 1975, and the second during the employment period April 1, 1976, through July 12, 1976. (Lab. Code, §§ 3208.1, 3208.2, 5303; *City of Los Angeles v. Workers' Comp. Appeals Bd.* (1978) 88 Cal.App.3d 19, 29-30 [151 Cal.Rptr. 679]; *Aetna Cas. & Surety Co. v. Workmen's Comp. Appeals Bd.* (1973) 35 Cal.App.3d 329 [110 Cal.Rptr. 780]; *Ferguson v. City of Oxnard* (WCAB en banc opn. 1970) 35 Cal.Comp.Cases 452.)

cant told Dr. Markovitz of job stress and harassment, of frequently being reprimanded, of overcrowded classrooms, and that the Friday before her December 14, 1975 (on a Sunday) heart attack she had an argument with the school business coordinator, Mr. Reith. After she returned to work, she told Dr. Markovitz, she claims again to have been overworked, being under pressure, and being forced to work with classes back-to-back for four hours (no break in between classes). Dr. Markovitz opined that the December 14, 1975, heart attack would have occurred on the basis of nonindustrial factors irrespective of what her occupation had been. Dr. Markovitz stated that *if* she were under the severe stress, as applicant claims, there would have been an industrial component leading up to the December 1975 heart attack. Dr. Markovitz observed that if, on the other hand, applicant's allegation of stress were untrue, then there would be no industrial component to the heart attack. Dr. Markovitz candidly admitted that it "comes down to a point of whether . . . there wasn't a horrendous stress [as maintained by L.A. School District and State Fund] or whether the patient's allegations of horrendous stress are true." Dr. Markovitz "didn't know which to believe." However, as to the incident in July 1976 resulting in hospitalization, Dr. Markovitz states that "There possibly was a temporary aggravation and possibility even due to stress in the classroom of July 1976 or possibly due to the fact that she was told she wouldn't have a job after that summer but in any event this was only a temporary aggravation and at best required the hospitalization of July 1976 but it resulted in no further permanent disability to the heart."

Reporting on behalf of applicant, Edward Dickstein, M.D., opined that applicant's heart attack and disability were due to her stressful work for L.A. School District.

Because of the conflict in the medical evidence, applicant was referred to Bernard Smolens, M.D., as an agreed medical examiner. As indicated in Dr. Smolens' report dated November 28, 1977, applicant also told Dr. Smolens of job stress, harassment, being humiliated and belittled, and of a heated argument with Reith *one week* prior to the heart attack in December 1975. Dr. Smolens concluded that job stress played a role in the development of applicant's heart disease.

Dr. Smolens was then cross-examined by the parties. Dr. Smolens acknowledged that in reaching his opinion he relied upon the history of stress as given by applicant. He believed that the job stress, *as appli-*

*cant perceived it,* contributed to the July 13, 1976, hospitalization. Dr. Smolens observed that the treating physician at the time of the July 13, 1976, episode noted a situational stress reaction and relied upon this in part in finding industrial relationship to this episode. Dr. Smolens' opinion of an industrial relationship of the December 1975 heart attack relied heavily on applicant's history of constant stress and harassment and the argument with Reith shortly before her heart attack. Dr. Smolens acknowledged that he accepted the history of job stress given by applicant "at face value." When asked whether if the true facts were not as applicant had relayed them Dr. Smolens would conclude there was no industrial relationship, Dr. Smolens responded that he doubted that "it would be that way" but rather "the degree of stress may [have been] different than [he] was given to understand, but [he could not] believe that there was no stress, which is the only way in which [he] would say there was no apportionment" to industrial causation.

Explaining his finding that no cumulative industrial injury had occurred, the judge stated in his opinion on decisions:

"In her testimony applicant has attempted to convey a picture of continuous, unrelenting and constant stress in her teaching 2 hours per day 5 days a week. She testified she had large classes without adequate seating capacity; that she was required to attend frequent meetings; she was constantly harassed by the Business Coordinator [, William Reith]. In particular, she testified that about a week prior to her heart attack, she had an argument with the Business Coordinator which lasted for 1 hour and in the week following this argument she was off work because of physical problems. . . . She also gave examining doctors similar information that a short time before her heart attack that she had a serious confrontation with the Business Coordinator (see p. 2, Report of Dr. Dituri dated 3/23/77; p. 2, Rept. of Dr. Markovitz dated 7/26/77; p. 3, Rept. of Dr. Smolens dated 11/28/77).

"Testimony was received from [Dr. Wesley M. Balbuena, Sr.,] principal of the school. He testified in a credible manner that applicant never came to him with any problems; that he held 1 meeting per year; that from the register it appeared that applicant had 20 students per class; and that the seating capacity of the room was about 30.

"The Training Coordinator [Howard Thomas Ingersoll,] also testified credibly regarding the meeting [with the Business Coordinator] which

according to what the applicant testified and informed the doctors took place about a week before her heart attack; that he was present at the meeting which actually took place on 5/21/75; and that applicant left the meeting before its conclusion to keep a dental appointment.

"William Reith, the [Business] Coordinator, also testified. His testimony was considered credible. He testified as to some differences with applicant including comment [regarding] retaining students in class for undue number of hours, and regarding assigning more classes to her at her request. He also testified that he would visit her classes perhaps two times a week.

"When all of the evidence is weighed, the Court cannot accept applicant's version of what is now presented as stressful aspects of her teaching 10 hours over a 5 day period. Her version of the atmosphere in which she performed is not consistent with her constant seeking of more teaching time. It seems quite clear that the meeting with Mr. Reith which occurred on 5/21/75, played no part in applicant's heart attack on 12/14/75.

"Dr. Smolens has testified, in essence, that applicant would have had her infarction when she did irrespective of whether or not she had worked under stress. Dr. Dituri, who examined applicant and had access to her treatment records from Kaiser was of the opinion that her infarction at home was in no way attributable to her work (rept. 3/23/77). Dr. Markovitz, who examined applicant was also of the opinion that applicant would have had a myocardial infarction in 12/75, no matter what her occupation was (rept. 7/26/77).

"In view of the unreliability of applicant's testimony regarding her work and work environment and the more credible evidence of the school officials who testified, and of the persuasive medical opinion that applicant's infarction would have occurred when it did regardless of her work and her work conditions, it is found that applicant did not suffer [cumulative] injury which occurred in the course of her employment . . . as alleged."

In granting reconsideration and finding that a cumulative injury had occurred as alleged by applicant, the WCAB expressly indicated reliance upon Dr. Smolens' opinion that applicant's job stress resulted in

injury to her heart. As to the judge's indication of applicant's lack of credibility, the WCAB remarked:

"We are mindful that the workers' compensation judge did not find applicant credible in many respects. However, in a case such as this the applicant's perceptions, even if inaccurate as far as other witnesses are concerned, are of great importance. What perhaps was not stressful to other workers and should not have been stressful as far as observers are concerned, may have been very stressful to the applicant because of her particular personality makeup...."

L.A. School District and State Fund now seek review of the WCAB's decision finding that applicant sustained cumulative injury to her heart as the result of her employment.

## II

At the outset it must be noted that the judge's finding of a specific injury on July 13, 1976, is not before this court for review as L.A. School District and State Fund failed to seek reconsideration by the WCAB on this point directly from the decision of the workers' compensation judge. (Lab. Code, § 5904; *Cedillo* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 450, 456 [96 Cal.Rptr. 471, 487 P.2d 1039]; *U.S. Auto Stores* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 469, 477 [93 Cal.Rptr. 575, 482 P.2d 199]; *Morgan* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 710, 713, fn. 1 [149 Cal.Rptr. 736].) All that is before this court is the finding of an industrial cumulative injury.

■ Where a factual finding of the workers' compensation trial judge "is supported by solid, credible evidence, it is to be accorded great weight by the [WCAB] and should be rejected only on the basis of contrary evidence of considerable substantiality." (*Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 281 [113 Cal.Rptr. 162, 520 P.2d 978]; *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 318-319 [90 Cal.Rptr. 355, 475 P.2d 451]; *Western Electric Company* v. *Workers' Compensation Appeals Bd.* (1979) 99 Cal.App.3d 629, 643 [160 Cal.Rptr. 436].)

Here, the trial judge found applicant was not credible in her testimony and rather accepted the testimony of witnesses that the alleged harassment, etc. did not occur. The WCAB has not pointed to evidence of "considerable substantiality" warranting a position on credibility con-

trary to that taken by the trial judge. Indeed, the WCAB has failed to explain with sufficient clarity exactly why it was disagreeing with the trial judge. (Lab. Code, § 5908.5; *Cal-Nat Airways, Inc.* v. *Workmen's Comp. App. Bd.* (1968) 268 Cal.App.2d 93, 97-98 [73 Cal.Rptr. 815]; *Western Electric Company* v. *Worker's Comp. Appeals Bd., supra,* 99 Cal.App.3d at p. 645.)

The WCAB merely states reliance upon Dr. Smolens as evidence supporting its position. Dr. Smolens' report and testimony, however, are based upon an incorrect history of job stress. Especially significant is that Dr. Smolens was told by applicant that she had a major argument with Reith within the week prior to her December 1975 heart attack; as found by the judge, this meeting actually occurred several months prior to the heart attack. Thus, as Dr. Smolens' opinion is based upon incorrect facts, it does not constitute substantial evidence. (*Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169-170 [93 Cal. Rptr. 15, 480 P.2d 967].)

The WCAB's opinion also states that what might not have been stressful to others might have been stressful to applicant. In *Lamb* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at pp. 282-283, the court observed that "it.is not the Board's assessment of the amount of stress *inherent* in a workman's employment which governs in matters of stress-caused injury, but rather the Board's determination of the amount of stress which the particular employment has *in fact* exerted on the particular workman." (Italics in original.)

As the judge pointed out in his report and recommendation on petition for reconsideration. "The facts present here are materially and significantly different from those in...*Lamb.*" Here, the judge found applicant not credible as to the allegations of stressful events and harassment (e.g., badgering by her superiors; overcrowded classes; unsafe wiring in the classroom; being requested, *by the school*, to teach back-to-back classes). Certainly, having found that particular events alleged by applicant to have occurred during her employment either did not happen as described by applicant or did not happen at all, the judge was not bound to accept applicant's general allegations of stressful employment. (*Alexander* v. *Workmen's Comp. App. Bd.* (1968) 262 Cal.App.2d 756, 758-759 [69 Cal.Rptr. 190].)

Accordingly, the WCAB's present decision is not supported by substantial evidence in light of the entire record. (Lab. Code, §§ 5951,

5952, 5953; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432].)

### III

The decision of the WCAB finding that applicant sustained cumulative injury to her heart as the result of her employment for L.A. School District is annulled and the matter is remanded to the WCAB.

Stephens, Acting P. J., and Hastings, J., concurred.

The petition of respondent Henry for a hearing by the Supreme Court was denied March 25, 1981.