[No. B182145. Second Dist., Div. Six. Sept. 29, 2005.]

COUNTY OF SAN LUIS OBISPO, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and ART MARTINEZ,
Respondents.

COUNSEL

Sedgwick, Detert, Moran & Arnold, Christina J. Imre, Michael M. Walsh; Gray & Prouty and Kathleen L. Wilson for Petitioner.

James P. Harvey for Respondent Art Martinez.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

**COFFEE, J.**—The County of San Luis Obispo (County) petitions for a writ of review to determine the lawfulness of a decision of the Workers' Compensation Appeals Board (WCAB) finding the County discriminated against its employee, Art Martinez, for sustaining a work-related injury. (Lab. Code,

§ 132a.)[1] The County contends it permissibly took Martinez off work because his medical restrictions were inconsistent with the requirements of his job. We agree that Martinez failed to establish a prima facie case of discrimination and that the County met its burden of showing reasonable business necessity.

*FACTS*

Respondent Art Martinez sustained industrial injury to numerous body parts, including his neck, spine, wrist and shoulder, on February 24, 2000, while working as a mental health therapist in the homeless outreach program for the County. The injuries occurred during an assault by a violent patient. The County admitted injury and paid Martinez temporary disability from the date of injury until he returned to work in February 2003.

On September 24, 2001, Martinez had back surgery. On June 17, 2002, Dr. Kissel, the surgeon, issued a report recommending that Martinez's work be modified so that he not be required to restrain patients to avoid reinjuring his lower back.

On December 9, 2002, Dr. Kissel issued a report declaring Martinez permanent and stationary. The report states that Martinez had lost 25 percent of his preinjury capacity for bending, stooping, lifting, pushing, pulling, climbing and other activities involving comparable physical effort. Dr. Kissel contradicted his prior opinion and stated that Martinez's injury did not preclude him from physically restraining patients. On December 16, in a letter to Martinez's attorney, Dr. Kissel again stated Martinez's injuries did not preclude him from restraining combative patients.

Based on Dr. Kissel's revised opinion, the County permitted Martinez to return to work on February 23, 2003. His old job was not available, and he was placed at Vicente School, a facility serving emotionally disturbed teenagers.

Subsequently, Martinez selected Dr. Hutchinson as qualified medical examiner. He examined Martinez and issued a report on May 22, 2003. The report imposed work restrictions of no "very heavy lifting" and no "heavy work activities." Dr. Hutchinson opined that Martinez should not be returned to a job with a potential for involvement in physical altercations. In a subsequent deposition, Dr. Hutchinson testified that Martinez had lost half of his preinjury capacity for activities of bending, stooping, lifting, pushing, pulling, climbing or other comparable activities and that Martinez should not be doing a job with the potential of becoming involved in a physical altercation. In

---

[1] All statutory references are to the Labor Code.

response to the question "if his job involves the potential for physical altercation, then he should not be doing that job," Dr. Hutchinson replied: "[T]hat's what I've repeatedly said."

Martinez designated Dr. Ruda, a chiropractor, as his primary treating physician on May 22, 2003. In a report issued August 21, Dr. Ruda stated he was "in complete agreement" with Dr. Hutchinson's opinion.

The County's risk manager, Dori Duke, requested a description of Martinez's duties at Vicente School after being informed of the Hutchinson and Ruda reports. In response, County Mental Health Youth Services issued a memorandum on September 2, 2003, that described Martinez's duties as including the potential for altercations with teenagers, some weighing 300 pounds. The memo also states: "This program has been in existence for over 20 years. In the past years, there have been incidents where furniture (chairs, desks) have been thrown in angry outbursts in the classroom; youth have assaulted staff or other youth with hands and objects; youth have brought 'sharps' to the program; youth have threatened to harm staff with various items, which sometimes puts staff at risk of physical injury; youth have run away from the program; and police have had to be summoned in cases where the safety of the staff or other youth was at risk."

A hearing was held on September 22, 2003, to determine permanent disability. On October 17, a findings and award issued awarding Martinez 39 percent permanent disability and further medical treatment.

On September 26, 2003, the County's insurance adjuster sent a letter to Duke stating that the work restrictions imposed by Dr. Hutchinson and Dr. Ruda appeared to be incompatible with Martinez's job duties at Vicente School. The letter informed Duke that a formal job analysis would be prepared. On that date, Martinez was advised not to report to work until further notice.

On October 1, 2003, Genex Services provided a job analysis of Martinez's duties at Vicente School. Under "general job description," the report states: "Workers may be required to restrain youths weighing up to 150 pounds, including lifting, holding and pulling the youth on rare occasions when they pose a threat to other youths."

On October 7, 2003, Martinez filed a petition for penalty under section 132a. Two days later, the County responded in a letter to Martinez's attorney. The letter states in part: "My client is performing what it believes to be a lawful and reasonable investigation into whether or not Mr. Martinez is capable of performing the usual and customary duties of his occupation. . . .

[¶] Pending a full determination as to Mr. Martinez's ability to perform all of the usual and customary duties of his occupation, without fear of harm for himself or others, in accordance with the medical opinions of the doctors, Mr. Martinez was taken off work. . . . [¶] . . . [¶] If it is determined that the job is physically inappropriate, the County would then make its determination as to whether there is any accommodation or other position for which he is qualified within the County."

On November 24, 2003, Duke received a memorandum from the County's Director of Behavioral Health Services, stating in part: "Genex conducted a job analysis for the position of Mental Health Therapist II, currently held by Art Martinez. . . . The Vicente Intensive Mental Health School Linked Program is provided by 3 Mental Health Therapists serving 10 seriously emotionally disturbed adolescents . . . . Of special importance is the function of being able to contain or restrain combative students. Because of the unplanned and sporadic nature of these events, it is impossible to assign these duties to other staff. It is also essential to provide timely and appropriate interventions in crisis situations to avoid serious escalation and injury to students and staff."

A hearing was held on Martinez's petition for penalty on February 2, 2004. Martinez testified that he could perform all required job duties. He admitted that some of the students at Vicente weighed 300 pounds but asserted there was not a potential of assaults by students.

Risk Manager Duke testified that Martinez initially was released to work without restrictions. When she later learned that Martinez had significant restrictions, she was concerned about the safety of Martinez and the students. She believed that the County would be civilly responsible if they did not take action to prevent injuries to staff or students. She stated that after the County became aware of the Hutchinson and Ruda reports, there was an ongoing discussion regarding Martinez's ability to continue working in his position. She testified that Martinez was not taken off work based on having received a permanent disability award, but because of the work restrictions imposed on him.

Brad Sunseri testified that he is the clinical program manager of Vicente School and has ultimate responsibility for determining whether Martinez could return to work. He testified that, in January 2003, he learned Martinez was available to fill an open position at Vicente. He did not consider the position at Vicente a light-duty position. He was aware that Martinez had back surgery, but understood that he had no restrictions and could perform any job.

Sunseri also testified that a number of the male students at Vicente School weigh between 200–300 pounds. He stated the students are seriously emotionally disturbed, have low frustration levels, and can become aggressive. He further testified that there are incidents of physical aggression between staff and students.

David Mayfield, Martinez's supervisor, testified he had worked at Vicente School for 20 years. He stated some students weigh 200–365 pounds, and he revised the job analysis done by Genex. He testified that all the students at the school have severe mental problems and some have physically aggressive tendencies. He stated he has sustained broken bones and received a lot of bruises while restraining combative students. He recalled a recent incident where a student pushed him into a planter box and his fall was broken by a fellow staff member. He stated that violence "can occur any time with any student."

Jason Hoosoon testified that he worked at Vicente School for three years as a mental health therapist III. His job duties are the same as Martinez's. Hoosoon stated the job was physically demanding. He stated there are altercations on a daily basis with students and it is part of his job to intervene. He testified that he had been threatened with physical harm by students and he was required to restrain combative students on three occasions.

The workers' compensation judge (WCJ) issued findings and award on February 11, 2004, finding the County unlawfully discriminated against Martinez in violation of section 132a and awarding back pay, reinstatement and a $10,000 penalty. The WCJ found that Martinez was "essentially terminated." He relied on Dr. Ruda's opinion that Martinez could continue in his "modified position." The WCAB granted the County's petition for reconsideration in order to have more time to review the case. The WCAB affirmed the WCJ's decision by a two-to-one vote, incorporating the WCJ's report on reconsideration and writing its own lengthy opinion.

## DISCUSSION

■ The court's review of a section 132a award is confined to the determination of whether, under applicable principles of law, the award is supported by substantial evidence in light of the whole record. (*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 664 [150 Cal.Rptr. 250, 586 P.2d 564].) The court is not bound by the WCAB's conclusions of law and it is for the court "to decide whether the facts found by the Board constitute a violation of section 132a." (*Barns v. Workers' Comp. Appeals Bd.* (1989) 216 Cal.App.3d 524, 530–531 [266 Cal.Rptr.

503].) Any award of the WCAB must be supported by substantial evidence. (*Judson Steel Corp.*, at pp. 666–667.) This standard is not met " 'by simply isolating evidence which supports the board and ignoring other relevant facts of record which rebut or explain that evidence.' " (*Western Electric Co. v. Workers' Comp. Appeals Bd.* (1979) 99 Cal.App.3d 629, 642 [160 Cal.Rptr. 436].)

### The Prima Facie Case

Prior to 2003, an employee could establish a prima facie case of discrimination merely by showing that, as the result of an industrial injury, the employer engaged in conduct detrimental to him. (*Barns v. Workers' Comp. Appeals Bd., supra*, 216 Cal.App.3d at p. 531.) If the employee made this showing, the burden shifted to the employer to show that its conduct was necessitated by the realities of doing business. (*Ibid.*)

■ However, an employee's burden of showing a prima facie case of discrimination was made heavier by the Supreme Court in *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1298 [135 Cal.Rptr.2d 665, 70 P.3d 1076] (*Lauher*). "[F]or [an employee] merely to show he suffered an industrial injury and that he suffered some detrimental consequences as a result is insufficient to establish a prima facie case of discrimination within the meaning of section 132a." (*Id.* at p. 1300.) *Lauher* requires an employee not only to show detriment but also show that he was singled out for disadvantageous treatment because of his injury. (*Id.* at p. 1301.)

The parties argued and the WCAB decided this case under the *Barns* standard. Because the WCAB and the parties did not proceed under the correct legal standard, the record before the court contains no evidence that Martinez was singled out for disadvantageous treatment. Without such evidence, we cannot determine whether Martinez met his burden of proof. It is unnecessary, however, to remand for the taking of evidence on this issue because the County has met its burden of showing it terminated Martinez because of a good faith belief that he could not perform the duties of his employment without risk of reinjuring himself.

### Reasonable Business Necessity

■ "Section 132a does not compel an employer to ignore the realities of doing business by 'reemploying' unqualified employees or employees for whom positions are no longer available." (*Judson Steel Corp. v. Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 667.) An employer is not guilty of retaliatory discrimination when the employee cannot perform the customary

work without risk of either reinjury or further injury. (*Barns v. Workers' Comp. Appeals Bd.*, *supra*, 216 Cal.App.3d at p. 534; *Bennett v. Workers' Comp. Appeals Bd.* (1997) 62 Cal.Comp.Cases 171 (writ den.); *Carlock v. Workers' Comp. Appeals Bd.* (1995) 60 Cal.Comp.Cases 1227 (writ den.).)[2]

■ The WCAB's conclusion that the County did not meet its burden of showing reasonable business necessity is based on several errors of fact and law. The WCAB found the County did not meet its burden of showing business necessity because it was aware when it returned Martinez to work in February 2003 that he had work restrictions precluding him from subduing combative students. This finding is not supported by the evidence. The record shows that the County returned Martinez to work in February 2003 based on Dr. Kissel's opinion that Martinez was capable of handling altercations. It was not until after Martinez returned to work that Dr. Hutchinson and Dr. Ruda issued opinions contrary to that of Dr. Kissel and imposed work restrictions precluding Martinez from engaging in altercations.

■ The WCAB also erred by focusing on what the County knew at the time it returned Martinez to work. It is the employer's knowledge at the time it terminates an employee, not its knowledge at the time it returns him to work, that is relevant in determining whether an employer established reasonable business necessity. (*Leamon v. Workers' Comp. Appeals Bd.* (1987) 190 Cal.App.3d 1409, 1414–1415 [235 Cal.Rptr. 912].) An employer may be justified in terminating an employee if at the time of termination the employer reasonably believes that returning the employee to his position would endanger the employee or others. (*Kirkman v. Workers' Comp. Appeals Bd.* (1983) 48 Cal.Comp.Cases 805 (writ den.).)

■ The WCAB also found discrimination because the County did not obtain an additional medical opinion before it terminated Martinez. Again, this finding is not supported by the record or the law. Dr. Kissel's opinion that Martinez was able to handle aggressive students was contradicted by the later opinions of Martinez's own qualified medical examiner and treating physician. Under these circumstances, an additional medical opinion was not required. (See, e.g., *Rossi v. Workers' Comp. Appeals Bd.* (2001) 66 Cal.Comp.Cases 538 (writ den.) [no discrimination where employee's primary treating physician opined employee could return to work without restrictions, but later the employee's qualified medical evaluator (QME) imposed significant restrictions]; *Rosas v. Workers' Comp. Appeals Bd.* (1998) 63 Cal.Comp.Cases 781 (writ den.) [no discrimination where employee's primary treating physician and QME opined employee could not perform

---

[2] Although lacking precedential value, WCAB decisions reported in the California Compensation Cases reporter are of great weight in revealing the WCAB's contemporaneous interpretation and application of the workers' compensation laws. (*Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, fn. 2 [94 Cal.Rptr.2d 186].)

usual and customary duties without modification]; see also *Smith v. Workers' Comp. Appeals Bd.* (1996) 61 Cal.Comp.Cases 137, 139 (writ den.) [employer's decision to terminate is not discriminatory when the medical evidence is unclear or ambiguous]; *Bergmann v. Workers' Comp. Appeals Bd.* (1989) 54 Cal.Comp.Cases 103 (writ den.) [no discrimination where medical reports as to an employee's ability to return to work are conflicting].)

The WCAB found the County acted in "bad faith" because it "manipulated the job analysis" by changing the maximum weight of students at Vicente School from 150 pounds to 300 pounds. Again, this finding could only have been reached by ignoring critical evidence. The record contains undisputed testimony from Martinez's department head, his supervisor, and Martinez himself, that students at Vicente sometimes weighed 300–350 pounds. This evidence demonstrates that the County corrected the job description to reflect the actual conditions at the school, not as a pretext for discrimination.

Substantial evidence supports the County's defense of reasonable business necessity. The order of the WCAB is annulled.

Gilbert, P. J., and Perren, J., concurred.