Filed 9/14/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GURDIP KAUR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>FOSTER POULTRY FARMS LLC,<br><br>Defendant and Respondent. | F081786<br><br>(Super. Ct. No. 17CECG03360)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. Kristi C. Kapetan, Judge.

Bahar Law Office and Sarvenaz Bahar; Law Office of Dean B. Gordon and Dean B. Gordon for Plaintiff and Appellant.

Waxman and Achermann and James J. Achermann; Gearheart and Sonnicksen and Justin C. Sonnicksen for California Applicants' Attorneys Association as Amici Curiae on behalf of Plaintiff and Appellant.

Jesselyn Friley, Mark D. Rosenbaum, Kathryn Eidmann for Public Counsel as Amici Curiae on behalf of Plaintiff and Appellant.

Wanger Jones Helsley, Michael S. Helsley, John P. Kinsey and Amber N. Less, for Defendant and Respondent.

-ooOoo-

**SEE CONCURRING OPINION**

In this employment matter, plaintiff and appellant Gurdip Kaur (Kaur) appeals from the trial court's grant of summary judgment in favor of her former employer, defendant and respondent Foster Poultry Farms LLC (Foster Farms), on her claims of discrimination based on disability and race/national origin, and retaliation, under the Fair Employment and Housing Act (FEHA) (Gov. Code, §§ 12900 et seq) and Labor Code section 1102.5. The principal issue on appeal is whether a decision by the Workers' Compensation Appeals Board (WCAB) denying Kaur's claim for disability discrimination under Labor Code section 132a has res judicata or collateral estoppel effect in the instant action. For purposes of the instant matter, we conclude it does not. The trial court's grant of summary judgment was based on giving collateral estoppel effect to the WCAB decision. We therefore reverse the trial court's judgment.

## PROCEDURAL HISTORY

### Complaint

Kaur filed the complaint in this matter on October 3, 2017. The complaint asserted six causes of action against Foster Farms. The first five causes of action arose under FEHA: (1) discrimination on the basis of race/nationality and disability; (2) failure to provide reasonable accommodation; (3) failure to engage in an interactive process; (4) failure to take all reasonable measures to prevent discrimination; and (5) retaliation for asserting FEHA rights. The sixth cause of action asserted in the complaint was retaliation in violation of Labor Code section 1102.5.

### Defendant's Motion for Summary Judgment

Prior to initiating the instant lawsuit, on July 22, 2016, Kaur filed a petition against Foster Farms with the WCAB, asserting claims under Labor Code section 132a. Kaur's Labor Code section 132a claims against Foster Farms were litigated in an administrative hearing over three days, spread over the course of a year, before workers' compensation Administrative Law Judge (ALJ) Debra Sandoval. The ALJ issued her ruling on July 9,

2.

2019, denying Kaur's petition. (We refer to the ruling interchangeably as the WCAB decision/opinion or the workers' compensation ALJ's decision/ruling/opinion.)[1]

Thereafter, Foster Farms amended its answer in the instant case to assert an affirmative defense that all of Kaur's disability-related claims were barred by res judicata and collateral estoppel based on the workers' compensation ALJ's ruling on, and denial of, Kaur's Labor Code section 132a petition.

Foster Farms then moved, on the basis of this affirmative defense, for summary judgment. More specifically, Foster Farms sought summary adjudication of Kaur's disability-related and other claims in the instant matter based on res judicata and/or collateral estoppel, in light of the WCAB's adjudication of Kaur's Labor Code section 132a petition. Foster Farms also sought summary adjudication of Kaur's cause of action for discrimination based on race/national origin on grounds it was barred by the applicable statute of limitations.

In connection with its motion for summary judgment, Foster Farms requested the superior court to take judicial notice of (1) Kaur's WCAB petition, (2) the minutes and a summary of evidence (there was no reporter's transcript) from the three-day trial before the WCAB; and (3) the WCAB opinion.

Kaur opposed Foster Farms' motion for summary judgment on grounds that Foster Farms had not established its affirmative defense of collateral estoppel/res judicata, Kaur's race/national origin discrimination claim was timely, and there were numerous triable issues of material fact.

In addition, Kaur objected to Foster Farms' request for judicial notice of the WCAB records on various grounds, including the contention that the trial court could not take judicial notice of the truth of the factual assertions reflected in these records.

---

[1] "Orders, findings, decisions and awards issued by a workers' compensation judge shall be the orders, findings, decisions and awards of the Workers' Compensation Appeals Board unless reconsideration is granted." (Cal. Code Regs., tit. 8, § 10330.)

3.

The trial court granted Foster Farms' request for judicial notice and also granted summary judgment in favor of Foster Farms, holding that the WCAB opinion barred Kaur's disability-related and other claims under FEHA and Labor Code section 1102.5, and that Kaur's race/nationality discrimination action was time barred. This appeal followed.

## FACTS

### *Kaur's Work History*

Kaur started working at Foster Farms in 2001 and worked for the company for nearly 15 years. For the last eight years of her employment, from 2008 to 2016, Kaur worked as a yield monitor at Foster Farms' Cherry Avenue plant (Cherry plant), a chicken processing facility.

### *Kaur's Workplace Injury in April 2013*

On April 24, 2013, Kaur slipped at work while wearing company-issued rubber boots; she broke her left wrist.

Kaur was required to wear slip-resistant rubber boots provided by Foster Farms for her work as a yield monitor. Kaur testified at deposition that for two weeks prior to her accident, she "kept asking" her supervisor, Cheng Vang, for new boots because her boots were "slippery."

On the day of her accident, Kaur first slipped at approximately 8:30 a.m. She went to Vang and asked for new boots. Vang told her to get a new pair of boots from Rosa in the supply room. Rosa told Kaur that Kaur's boots were only six-months old and did not give Kaur new boots.

Kaur returned to work and slipped a second time that day but was able to prevent a fall by grabbing onto a coworker. This time she complained about her boots to another supervisor, Joe Wendy, the supervisor of the supply room. Wendy went to get new boots for Kaur but was told by Rosa that boots in Kaur's size were unavailable. Kaur believed Rosa was lying, as she had not mentioned the lack of availability to Kaur earlier that day.

4.

Approximately four hours after she talked to Wendy, Kaur slipped again. This time, she fell to the ground and broke her left wrist.

Kaur had ongoing problems in getting supplies from Rosa. Kaur is originally from India, and she and other Indian employees at the plant frequently encountered difficulties in obtaining work-related gear from Rosa. Kaur had heard that Rosa, who is Filipino, would readily provide supplies for other workers. Kaur believed Rosa refused Kaur's requests for supplies because Kaur is Indian.

Kaur complained about Rosa to Victor Moreno, the labor relations manager for Foster Farms. She told him Rosa refused to give her and other Indian employees gear and supplies they needed for work, because they are Indian. Moreno acknowledged there was a problem, " 'We see a lot of complaints against her, what can we do? You guys can get the supply from another person.' " Kaur and other Indian workers would try, whenever possible, to get their supplies from Sarah who worked in the supply department on another shift. However, they often had no choice but to go to Rosa as they needed new supplies every day, sometimes multiple times a day, especially gloves.

### After Surgery for her Broken Wrist, Kaur had Physical Restrictions

Kaur had surgery to address her broken wrist and thereafter was restricted in the use of her left hand and wrist for work. The work restrictions included no heavy work and no pulling, pushing, pinching, or lifting heavy weights with her left hand.

Kaur returned to work at Foster Farms in June 2013 and went back to her regular position as a yield monitor, with no modification in her duties; she used both hands in performing her yield monitor duties.[2] Kaur told her supervisor, Cheng Vang, that she needed light duty given the restrictions on using her left hand; Kaur told Vang, "I need light duty, change my job, I can't carry heavy stuff." Vang told her, "If you can't do the work,

---

[2]     Moreno, the labor relations manager, described the duties of yield monitors: "They would do routine checks of product, including temperatures, inventory levels, where they're at and what type of product we have in certain bins."

you should just quit." Kaur responded, " 'I need my job, I didn't get hurt at home, I got hurt here at work and it's because you didn't change my shoes.' " Kaur was left in tears.

Kaur reported Vang's comment to Moreno, the labor relations manager. Moreno told her, " 'Don't worry, I will take care of it.' " Moreno did not get back to Kaur about her complaint but apparently spoke with Vang because Vang came to Kaur later that day and told her to let him know of any problems she encountered. Vang even moved a bin for Kaur that weighed 159 pounds and was too heavy for Kaur to move herself. This was the only time that Vang helped her. Kaur said she encountered issues all day because she could only work with one hand. But thereafter, on an ongoing basis, Vang ignored her requests for accommodation and basically stopped talking to her. In addition, on December 27, 2013, Vang and another manager, Pang Xiong, terminated Kaur for an alleged violation of the company's lunch break policy, ostensibly based on video evidence. Although Kaur repeatedly requested to see the video, she was never shown it or given a copy. Kaur filed a grievance through her union, taking issue with her termination; she was reinstated in March 2014.

Kaur continually confronted problems working as a yield monitor, but she persevered to provide for her family.

### Foster Farms Underwent a Restructuring and Kaur was Terminated in June 2016

In May 2016, Foster Farms announced it would undergo a restructuring that would affect its Cherry and Belgravia chicken processing plants. The Cherry and Belgravia plants were located four miles apart. As part of the restructuring, the Cherry plant would lose 500 positions, while the Belgravia plant would gain 300 positions. Some employees would have to transfer from the Cherry plant to the Belgravia plant and would get to choose their position based on seniority.

Moreno, the labor relations manager, was responsible for overseeing the placement of employees affected by the restructuring. In June 2016, Moreno met with Kaur and told her she was losing her position as yield monitor because the company was reducing the

number of positions at the Cherry plant and employees with more seniority than Kaur had already selected the remaining yield monitor positions. Moreno told Kaur that the only position he believed she could do with her restrictions at the Cherry plant was pallet jack driver.

Kaur had constantly seen pallet jacks in operation throughout the Foster Farms facility, over her long tenure at the company. It was clear to Kaur that the job of a pallet jack driver was suitable for strong, healthy men. Kaur's coworkers unequivocally advised her that the work of a pallet jack driver required the use of both hands. Kaur was also aware from personal experience that she could not perform the pallet jack driver job with one hand. Prior to her meeting with Moreno, Kaur had tried to move a pallet jack that was obstructing her work area but was not able to drive it using only one hand. Kaur told Moreno she could not perform the job of a pallet jack driver because of her restrictions: "I told him this is not the job of one hand." Moreno asked Kaur to identify positions she could perform. Kaur proposed: (1) supply room, (2) grader, (3) position responsible for checking water and chemical levels (referred to as "PA"), (4) worker responsible for checking temperatures in the cooler, (5) worker responsible for checking rings, (6) back-up trainer, and (7) timekeeper. Moreno told her, " 'We have only [the] pallet jack job for you.' "

At the time, there were 100 open positions at the Cherry plant, but Moreno did not review the list of open positions with Kaur (other than showing her a master list on a dry erase board). An additional 300 positions were open at the nearby Belgravia plant at the time; the Belgravia plant had positions for graders, timekeepers, supply room workers, backup trainers, etc. Moreno did not consider or review with Kaur any of the 300 open positions at the Belgravia plant. Moreno acknowledged that as a 15-year employee, Kaur would have had "decent seniority" to select a position she wanted; with regard to positions other than the yield monitor position she had more seniority than many other people. Moreno believed the company's union contract prevented him from offering Kaur a job at the Belgravia plant because she was offered the pallet jack driver position at the Cherry

7.

plant. His understanding of the contract was that it prohibited interplant transfers if the employee in question was offered a position in his or her home plant. Other workers with less seniority than Kaur who were not able to secure a position at the Cherry plant were offered positions at the Belgravia plant.

The evidence showed it was undisputed that Kaur could not safely perform the pallet jack driver position with her restrictions. Per the company's official job description for the pallet jack driver position, the position called for transporting and loading product as well as stacking empty pallets and moving stacks of the same; the tools used in the position included, but were not limited to, "PIT (Power Industrial Truck) or Motorized pallet jacks." The applicable job description stated the position required "frequent" handling and gross manipulation with *both hands*; "frequent" was defined as "34-66%" of the time spent on the job. Moreno testified that, when he offered Kaur the position, he reviewed the job description and knew it stated the pallet jack position required the use of *both hands* 1/3 to 2/3 of the time. Moreno further acknowledged there was a "conflict" between the job description and Kaur's physical restrictions and that "[s]he may have had problems doing it just with her left hand."[3]

Moreno also acknowledged that operating the pallet jack with only one hand was not safe in congested areas of the plant. To explain why he felt it was appropriate to offer Kaur a position that, given the official job description and Moreno's personal knowledge, she

---

**3**      The "Job Summary" in the company's job description for the applicable "Pallet Jack/Inventory" position provided: "Workers in this position are responsible for transferring products in different forms in various locations throughout the plant. This may include inside, outside, in busy or crowded areas, in tight places and across various surfaces. All products may require scanning or documentation in some fashion as they are loaded to maintain proper tracking information. Most of the products are either kept in freezers or refrigerators at low temperature and are transferred to or from these areas. Some product may be taken and loaded onto trailers that are also refrigerated. Workers may wear cold weather gear while working depending on the location. Workers will stand while driving the PIT [power industrial truck] and must maintain good balance while driving. The worker may be responsible for stacking empty pallets and using a PIT to move stacks of the same."

could not safely perform, Moreno made an analogy to driving a car. He said: "[I]t's kind of like driving your car. The DMV says hands at 10 and 2 on the wheel, two hands, but I drive single-handed all the time and most people do." Moreno also referred to another job position, "live hanger," and noted, "if you read the job description[,] it says grab [the live birds] with two hands, but yet there's people out there all the time that are grabbing using one hand to place the bird and they'll alternate." Moreno acknowledged Foster Farms prepares accurate job descriptions in order to correctly document and record the physical requirements of each job.[4]

Moreno had offered to have Kaur trained for the pallet jack driver position, but Kaur declined the offer of training and rejected the position based on her understanding it was not compatible with her physical restrictions. Moreno believed the company had done all it was required to do to "accommodate" Kaur's disability by offering her the position of pallet jack driver and, since she had rejected the position, the company was not obligated to take further action. At deposition, Moreno was asked: "After [Kaur] refused the pallet jack operator, did you believe that Foster Farms' duty to accommodate [Kaur's] disability was satisfied or did you think that Foster Farms should try to find some other job that she might be able to do?" Moreno answered, "I felt we did meet our obligation."

Moreno did *nothing* with regard to Kaur's suggestions about the positions she could do consistent with her restrictions. At deposition, Moreno acknowledged that other positions that Kaur had requested came open a little later, including PA monitor and timekeeper. Moreno testified: "I believe [Kaur had requested] a timekeeper and a [PA]/ozone monitor [position]. The timekeeper happened to come up later in the process

---

**4** Notably, at the hearing on Foster Farms' motion for summary judgment in the instant matter, counsel for Foster Farms asserted: "[T]he original job that [Kaur] was doing was a yield monitor. That job description also said that you had to use two hands, but we still accommodated her in that position for a year trying to see if she could do it with one arm. She was able to do that. We were hoping she could do the same thing for a pallet jack operator, but she didn't even try. She just turned it down."

9.

after I was dealing with her, and I believe the PA/ozone monitor was a new position we identified [that] we needed for this new process to cut down on bacteria on the process, so there was one that was added later in the process." As to the PA/ozone monitor position, Moreno confirmed, "That job could be done with one hand." Moreno told Kaur to apply for these positions. The record suggests Moreno was referring to the Cherry plant, as he did not address what positions were available at the Belgravia plant. The record, however, is not clear whether Moreno was talking about a period before or after Kaur's termination in connection with these positions.

On July 22, 2016, Moreno informed Kaur she was being terminated. The sole reason for Kaur's termination was that she "chose not to take the [one] accommodation" offered by the company (i.e., the pallet jack driver position); it was not a performance-related termination. The company's termination letter to Kaur stated: "[Y]our employment with Foster Farms has ended due to not being able to find a position within your permanent restrictions despite our search over the past 60 days." Kaur asked Moreno, " 'You have many other positions, can you find me one?' " Moreno responded, " 'There's nothing right now.' "

Approximately 300 employees at the Cherry plant were involved in the restructuring; of these 300 employees, Foster Farms terminated only five to 10 employees. Moreno could not identify anyone else with Kaur's level of seniority who was terminated as part of the restructuring.

On October 24, 2016, Kaur filed a Labor Code section 132a petition with the WCAB. On February 22, 2017, Kaur filed a discrimination complaint with the Department of Fair Employment and Housing (DFEH). Kaur's complaint with the DFEH included allegations of disability discrimination as well as discrimination based on race/national origin. Kaur stated at deposition that three Foster Farms employees discriminated against her based on her race/national origin: Rosa, Supervisor Cheng Vang, and Supervisor Pang Xiong (Kaur is of Indian origin and Rosa, Vang, and Xiong are of Southeast Asian origin).

10.

## DISCUSSION

### I.     Summary Judgment:  Standard of Review

"Any party may move for summary judgment in an action if it is contended that the action has no merit."  (Code Civ. Proc., § 437c, subd. (a).)

"Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  This court reviews de novo the trial court's decision to grant summary judgment and we are not bound by the trial court's stated reasons or rationales.  [Citation.]  [¶]  In reviewing a motion for summary judgment, we accept as undisputed fact only those portions of the moving party's evidence that are uncontradicted by the opposing party.  In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn therefrom are accepted as true."  (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001 (*Hersant*).)  " 'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' "  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249-1250.)

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.  That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon.  (See Evid. Code, § 500.)  There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof….  [A] plaintiff bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto.  (Code Civ. Proc., § 437c, subd. (o)(1).)  A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense'

11.

thereto. (*Id*., § 437c, subd. (o)(2).)" (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850, fns. omitted.)

"[S]ummary judgment law in this state [no] longer require[s] a defendant moving for summary judgment to conclusively negate an element of the plaintiff's cause of action…. All that the defendant need do is to 'show[] that one or more elements of the cause of action … cannot be established' by the plaintiff. (Code Civ. Proc., § 437c, subd. (o)(2).)" (*Aguilar v. Atlantic Richfield Co*., *supra*, 25 Cal.4th at p. 853, fn. omitted.)

Finally, the principal issues in this appeal relate to the trial court's application of the doctrines of res judicata and/or collateral estoppel. As to these issues, we will independently determine whether Foster Farms' motion for summary judgment was properly granted on the ground that the undisputed facts establish that Kaur's disability-related claims were barred as a matter of law under the affirmative defenses of res judicata and/or collateral estoppel. (See, e.g., *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497.)

## II. WCAB Decision Did Not Have Preclusive Effect on Kaur's FEHA Claims

As noted, the primary issue raised by Kaur on appeal is whether the decision by the WCAB denying Kaur's claim for disability discrimination under Labor Code section 132a has a res judicata or collateral estoppel effect on the claims at issue in this action. Kaur argues the trial court erroneously determined that the WCAB's decision had preclusive effect as to Kaur's disability-related claims under FEHA (that is, her disability discrimination claim, failure to provide reasonable accommodation claim, and failure to engage in an interactive process claim). Kaur further argues the trial court erroneously concluded that Foster Farms had carried its burden on summary judgment to show that Kaur could not prove these claims at trial. Kaur challenges the trial court's grant of summary adjudication in favor of Foster Farms, on Kaur's disability-related claims under FEHA. In response, Foster Farms argues the trial court correctly found, with reference to the WCAB decision, that "the doctrine of issue preclusion/collateral estoppel bars [Kaur] from

12.

advancing her [disability-related] claims" under FEHA, and properly granted summary adjudication in favor of Foster Farms as to these claims. (Fn. omitted.)

We conclude the WCAB's decision on Kaur's Labor Code section 132a claim does not have preclusive effect on Kaur's disability related FEHA claims, and the trial court therefore erroneously granted summary adjudication in favor of Foster Farms as to these claims. Accordingly, we reverse the trial court's grant of summary adjudication as to Kaur's claims of disability discrimination, failure to provide a reasonable accommodation, and failure to engage in an interactive process.

In order to elucidate our reasoning, we will first address the scope of Labor Code section 132a and then discuss the law relevant to Kaur's disability related FEHA claims. Thereafter, we will analyze why the workers' compensation ALJ's ultimate findings do not have preclusive effect in this FEHA action, and in turn do not operate to dispose of Kaur's disability related FEHA claims.

### A. Labor Code Section 132a and the Workers' Compensation Administrative Law Judge's Decision on Kaur's Petition Under That Statute

As noted, Kaur filed a petition before the WCAB under Labor Code section 132a. Labor Code section 132a provides: "Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer." (Lab. Code, § 132a, subd. (1).) Succinctly stated, Labor Code section 132a, by its terms, applies to an employer who discharges, or threatens to discharge, or in any manner discriminates against an employee because the

13.

employee: (a) has filed or made known an intention to file a compensation claim with the employer or an application for adjudication, (b) has received a rating, award, or settlement, or (c) has testified or indicated an intention to testify in another employee's compensation case. (Lab. Code, § 132a, subds. (1), (3).)

"Although [Labor Code section] 132a specifies protected activity (e.g., claiming compensation, receiving a rating or award), the statute also declares a broad policy against discrimination 'in any manner,' and its provisions [have been] liberally construed to apply in other circumstances where an employee is penalized as a result of an industrial injury." (2 Witkin, Summary of Cal. Law (11th ed. 2022) Workers' Compensation, § 22; see Lab. Code, § 132a ["It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment."].)

*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658 (*Judson Steel*), is the seminal case for a broad application of Labor Code section 132a, beyond the strict terms of the statute. Ralph Maese, the petitioner in *Judson Steel*, was injured in January 1974, received medical treatment and compensation benefits, and returned to work in April 1975. The applicable union contract provided for loss of seniority status when an employee had not worked for 12 consecutive months because of illness or injury. The employer, interpreting this language as automatically causing a loss of seniority, laid Maese off two days after his return to work. However, under an exception in the contract, the 12-month period was normally extended by mutual consent of the union and the employer when the employee's absence was due to an industrial accident. The WCAB determined that the employer made no attempt to extend the period, and that loss of seniority as a result of an industrial injury was a penalty prohibited by Labor Code section 132a. Accordingly, the WCAB increased Maese's compensation by one-half. *Judson Steel* affirmed the WCAB's determination.

In affirming the WCAB's determination, *Judson Steel* "explained that the type of discriminatory actions subject to penalty under [Labor Code] section 132a is not limited to

14.

those enumerated in the statute," and "interpreted section 132a liberally to achieve the goal of preventing discrimination against workers injured on the job." (*Department of Rehabilitation v. Workers' Comp. Appeals Bd*. (*Lauher*) (2003) 30 Cal.4th 1281, 1299 (*Lauher*); see *Judson Steel*, *supra*, 22 Cal.3d at pp. 666-669.) *Judson Steel* "cautioned, however, that '[Labor Code] [s]ection 132a does not compel an employer to ignore the realities of doing business by 'reemploying' unqualified employees or employees for whom positions are no longer available.' " (*Lauher* at p. 1299; *Judson Steel*, *supra*, 22 Cal.3d at p. 667.)

In *Lauher*, *supra*, 30 Cal.4th 1281, our Supreme Court addressed the requirements of discrimination claims under Labor Code section 132a. *Lauher* held that to establish a prima facie case of discrimination in violation of Labor Code section 132a, an employee must show that the employer caused the employee to suffer some detrimental consequences as the result of an industrial injury, and that the employer singled out the employee for disadvantageous treatment because of the industrial nature of the injury. (*Lauher*, *supra*, 30 Cal.4th at pp. 1300, 1301; *County of San Luis Obispo v. Workers' Comp. Appeals Bd*. (2005) 133 Cal.App.4th 641, 648; *Gelson's Markets v. Workers' Comp. Appeals Bd*. (2009) 179 Cal.App.4th 201, 210.)

*Lauher* rejected an employee's claim that his employer discriminated against him within the meaning of Labor Code section 132a by insisting that he use his accumulated sick and vacation leave for the time he was away from work seeking treatment for his injury. In the absence of allegations suggesting otherwise, the court assumed that employees with nonindustrial injuries also were required to use their sick time to attend medical appointments. Thus, nothing indicated that the employer singled out the employee "*for disadvantageous treatment because of the industrial nature of his injury*." (*Lauher*, *supra*, 30 Cal.4th at p. 1301.) *Lauher* held "[a]n employer … does not necessarily engage in 'discrimination' prohibited by [Labor Code] section 132a … because it requires an employee to shoulder some of the disadvantages of the industrial injury." (*Lauher*, *supra*,

30 Cal.4th at p. 1300.) Rather, by prohibiting discrimination, "the Legislature meant to prohibit treating [industrially] injured employees differently, making them suffer disadvantages not visited on other employees because the employee was [industrially] injured or had made a claim." (*Ibid.*)

Kaur's petition before the WCAB alleged that she "was injured in an incident at work that arose out of employment and was in the course of her employment." The petition also alleged that Foster Farms "[was] aware that [Kaur] had suffered a work place injury on April 24, 2013." The petition further alleged that Foster Farms "did intentionally and by means of retribution [discriminate] against [her] and said discrimination was in response and in retribution for [her] claim of injury and her filing of her workers' compensation claim for benefits."

Kaur testified at a hearing held in the WCAB proceeding. Although no reporter's transcript of the hearing was prepared, the record includes a "Summary of Evidence" that summarizes Kaur's testimony. (Unnecessary capitalization omitted.) The Summary of Evidence documents the substance of Kaur's testimony, in part, as follows:

> "[Prior to Kaur's termination by Foster Farms,] [Vic] Moreno called her into his office and told her that Foster Farms didn't have a job available for her. He told her the only position they could offer her was a pallet jack driver, and nothing else was available. She told him a pallet jack operator needs the use of both hands, but he told her it could be done with one hand. She told him if he could go to the [facility] floor and operate the pallet jack with one hand then she would be willing to do it. When she returned to the [facility] floor and told her coworkers the job she had been offered they laughed and said the company was insane.

> "During her 16 years of working at Foster Farms [Kaur] saw the pallet jack being operated every day. She also had friends who operated it. Prior to her injury she had on occasion needed to operate a pallet jack in order to move it out of the way, so she knew it needed two hands to operate it. Both hands need to be able to twist at the wrist in order to operate the controls, and her left wrist doesn't twist. No other jobs were offered to her, and Vic Moreno never demonstrated that he could operate the pallet jack with one hand. [¶] …. [¶]

16.

"…. [Kaur] did not feel that the offer of pallet jack driver was *a legitimate job offer*.[5] She felt that Vic Moreno did not expect her to take the job, and that he offered it to her as an excuse to terminate her."

After the hearing, the worker's compensation ALJ presiding over the proceeding issued "findings of fact," an "order," and an "opinion on decision." (Unnecessary capitalization omitted.) The ALJ made the following "findings of fact": "(1) [Kaur] has failed to show that Defendant discriminated against [her] because of her industrial injury in violation of Labor Code Section 132(a)"; and (2) "Defendant's discharge of [Kaur] was reasonable and necessitated by the realities of doing business." (Unnecessary capitalization omitted.) The ALJ ordered that "[Kaur] take nothing on her Petition for [Labor Code section] 132(a) benefits." (Unnecessary capitalization omitted.) The ALJ issued a written "opinion on decision" that was a little over one page long. (Unnecessary capitalization omitted.) The "opinion on decision," in its entirety, stated as follows:

"In order to prevail on a claim for discrimination under Labor Code Section 132(a), the employee must show not only that the employer's action caused detriment to an industrially injured employee, but also that the employee was treated differently than non-industrially injured employees. Even if the employee establishes a prima facie case, the defendant can show that its actions were necessitated by the realities of doing business and, thereby, were not discriminatory.

"In this case, it is undisputed that [Kaur] was terminated at a time when Defendant was undergoing a plant wide downsizing affecting approximately 300 employees. As part of the downsizing, the number [of] employees needed in particular positions was being reduced with the remaining positions filled by seniority. [Kaur] had been working as a yield monitor for approximately two years following her injury when the number of yield monitor position[s] was reduced from 7 to 4 and [Kaur] was fifth in seniority.

"Defendant's witnesses testified credibly that within the restrictions of [Kaur's] seniority, union rules, essential work functions of various open positions and [Kaur's] permanent work restrictions[,] Defendant attempted to place [Kaur] into an alternative position since her position was being eliminated. [Kaur] refused to even attempt training for the open position of

---

**5** The workers' compensation ALJ addressed Kaur's testimony to this effect in her decision (see below).

17.

pallet jack operator. It is [Kaur's] contention that Defendant should have been able to find her a different alternative position that suited her better. [Kaur] claims that she was treated differently during the down-sizing process due to her industrial injury because most of the other displaced employees were able to be placed into an alternative position. *While she may have been treated differently than other non-injured employees, [Kaur] has failed to show that she was treated differently than non-industrially injured employees were or would have been treated.* [Kaur] failed [to] show that she was singled out for discriminatory treatment as a result of her *industrial* injury.

"Based upon the credible testimony of Defendant's witnesses, Defendant's actions in attempting to identify an alternative position that was open and available to [Kaur] based upon her seniority and within her permanent work restrictions were necessitated by the realities of doing business. [Kaur's] claim that Defendant's offer of a pallet jack operator *was not a legitimate offer* is not credible based upon her failure to even attempt a trial or training in the position before refusing." (Some italics added.)

### B. Kaur's FEHA Claims for Disability Discrimination, Failure to Provide Reasonable Accommodation, and Failure to Engage in a Good Faith Interactive Process

FEHA, Government Code sections 12900, et seq., prohibits discrimination in compensation or in terms, conditions, or privileges of employment because of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status." (Gov. Code, § 12940, subd. (a); *McCaskey v. California State Automobile Assn*. (2010) 189 Cal.App.4th 947, 979 ["FEHA makes it unlawful to take adverse action toward an employee 'because of' *his or her membership in a protected classification*."] (italics added); *Heard v. Lockheed Missiles & Space Co*. (1996) 44 Cal.App.4th 1735, 1748 ["An employer will be liable for intentional discrimination if it is shown that its employment decision was premised upon an illegitimate criterion."].) "A claim asserting a violation of this provision is a 'disparate treatment' claim." (*McCaskey*, *supra*, at p. 979.)

Three "unlawful employment practices" under FEHA are relevant to Kaur's principal disability-related claims: disability discrimination, failure to provide reasonable

18.

accommodation, and failure to engage in an interactive process.  (Gov. Code, § 12940.)[6]  As indicated above, section 12940, subdivision (a) (section 12940(a)) declares it an unlawful employment practice "[f]or an employer, because of the … physical disability … of any person … to bar or to discharge the person from employment … or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."  Section 12940(a)(1) clarifies that "[t]his part does not prohibit an employer from … discharging an employee with a physical … disability … if the employee, because of [his or her] physical … disability, is unable to perform [his or her] essential duties even with reasonable accommodations."  (§ 12940(a)(1).)

Next, section 12940, subdivision (m)(1) (section 12940(m)(1)) declares it an unlawful employment practice "[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical … disability of an … employee."  Section 12940(m)(1) clarifies that "[n]othing in this subdivision … shall be construed to require an accommodation that is demonstrated by the employer … to produce undue hardship."  Finally, section 12940, subdivision (n) (section 12940(n)) declares it an unlawful employment practice "[f]or an employer … to fail to engage in a timely, good faith, interactive process with the employee … to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee … with a known physical … disability or known medical condition."

In framing and defining the above-described concepts—disability discrimination, reasonable accommodation, interactive process—"FEHA seeks to assure [that] 'those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation' have the opportunity to do so and are not discriminated against based on their disability."  (*Shirvanyan v. Los Angeles Community College Dist.* (2020) 59 Cal.App.5th 82, 88 (*Shirvanyan*).)  Significantly, given the instant

---

**6**     Undesignated statutory references are to the Government Code.

context, "[f]or the purposes of a FEHA claim, *the cause of an employee's disability is irrelevant*; the focus is on the employer's efforts to reasonably accommodate the disability, *regardless of its cause*." (*Shirvanyan*, at p. 89, italics added.)

Although Kaur bears the burden of proving the elements of her claims at trial, in the summary judgment context the moving party bears the burden of demonstrating there are no material triable issues of fact and that it is entitled to judgment as a matter of law. Foster Farms sought summary judgment on the ground that Kaur could not establish her claims. It bore the initial burden of showing that Kaur could not establish one or more of the elements of her causes of action and the ultimate burden of proving there are no triable issues of fact as to her causes of action. (See *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 962-963 (*Nadaf-Rahrov*).)

      (i)     Disability Discrimination—Section 12940a

Kaur's first cause of action, disability discrimination, arises under section 12940(a). Section 12940(a) prohibits employers from discharging or taking another adverse employment action against an employee because of his or her physical disability. To establish discrimination under section 12940(a), an employee must show that he or she (1) suffered from a disability, (2) could perform the essential duties of the job with or without reasonable accommodation, and (3) was subjected to an adverse employment action because of the disability. (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 310.)

As to her disability discrimination claim, Kaur asserted that she suffered from a physical disability in that she injured her left wrist in a work-related accident on April 24, 2013. Kaur did not allege that, following her injury/disability she could perform the essential functions of her prior position as a yield monitor with or without accommodation. Rather, she alleged she sought accommodation of her disability through reassignment to a vacant position in the company that was compatible with her disability-related physical restrictions; an appropriate position was available, but Foster Farms did not assign her to the desired position; instead, Foster Farms terminated her on July 22, 2016. (See § 12926,

20.

subd. (p) [reasonable accommodation includes reassignment to an appropriate vacant position] (see below).) Kaur thus alleged *she was unlawfully discharged because of her disability*, as Foster Farms could have but did not provide her with a *reasonable accommodation* (reassignment to a vacant position compatible with her restrictions) that would have allowed her to continue working with the company.

When an employee seeks accommodation by being reassigned to a vacant position in the company, to prevail on summary adjudication of a section 12940(a) claim, the employer must show there is no triable issue of fact about the employee's ability, with or without accommodation, to perform the essential functions of an available vacant position that would not be a promotion. (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th 952, 962-963.)

### (ii) Reasonable Accommodation—Section 12940(m)(1)

Kaur's second cause of action, failure to provide a reasonable accommodation, arises under section 12940(m)(1). As noted, under FEHA, an employer's failure to make reasonable accommodation for the known physical disability of an employee is an unlawful employment practice. (§ 12940(m)(1).) A reasonable accommodation is any " 'modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.' " (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1010 (*Scotch*).) Reasonable accommodations include "[j]ob restructuring, part-time or modified work schedules, *reassignment to a vacant position*, … and other similar accommodations for individuals with disabilities."[7] (§ 12926, subd. (p), italics added; *Scotch*, at p. 1010.)

---

[7]  More specifically, reasonable accommodations are defined, by way of example, in section 12926, subdivision (p). Section 12926, subdivision (p) provides: " 'Reasonable accommodation' may include either of the following: [¶] (1) Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities. [¶] (2) Job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or

21.

Under section 12940(m)(1), employers are required to make reasonable accommodation for the known disability of an employee unless it would produce "undue hardship" to its operation. Section 12926, subdivision (u), defines the term, "undue hardship." Section 12926, subdivision (u) provides: "Undue hardship" means an action requiring significant difficulty or expense, when considered in light of the following factors: [¶] (1) The nature and cost of the accommodation needed. [¶] (2) The overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility. [¶] (3) The overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities. [¶] (4) The type of operations, including the composition, structure, and functions of the workforce of the entity. [¶] (5) The geographic separateness or administrative or fiscal relationship of the facility or facilities."

The elements of a failure to accommodate claim are " ' (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position [held or desired], and (3) the employer failed to reasonably accommodate the plaintiff's disability.' " (*Swanson v. Morongo Unified School District* (2014) 232 Cal.App.4th 954, 969 (*Swanson*).) " 'Ordinarily, the reasonableness of an accommodation is an issue for the jury." (*Prilliman v. United Airlines, Inc*. (1997) 53 Cal.App.4th 935, 953.)

FEHA imposes an " 'affirmative duty' " (*Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 598, quoting Cal. Code Regs., tit. 2, § 11068, subd. (a)) on employers " 'to make [a] reasonable accommodation for the known disability of an

interpreters, and other similar accommodations for individuals with disabilities." (Italics added.)

22.

employee unless doing so would produce undue hardship to the employer's operation.' "
(*Shirvanyan*, *supra*, 59 Cal.App.5th at p. 88; § 12940(m)(1).)  Thus, "[i]f the employee
cannot be accommodated in his or her existing position and the requested accommodation is
reassignment, an employer must make affirmative efforts to determine whether a position is
available." (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215.)  "Telling the disabled
employee to check available job postings does not satisfy the employer's duty to reassign or
transfer a disabled employee to a vacant position.  The employer is in a better position to
know what jobs are vacant *or may become vacant* to which the person with the disability
can be assigned." (Chin et al., Cal. Practice Guide:  Employment Litigation (The Rutter
Group 2022) ¶ 9:2269, italics added.)

"Although an employer does not have an obligation to create a new job, reassign
another employee, or promote a disabled employee, '[c]ourts have made it clear that "an
employer has a *duty* to reassign a disabled employee if an already funded, vacant position at
the same level exists." ' [Citation.]  Moreover, a disabled employee seeking reassignment
to a vacant position '*is entitled to preferential consideration*.' " (*Swanson*, *supra*, 232
Cal.App.4th at p. 970, second italics added; see Cal. Code Regs., tit. 2, § 11068, subd. (d)(5)
["The employee with a disability is entitled to preferential consideration of reassignment to
a vacant position over other applicants and existing employees."].)

"Because the normal course of an employee's job may not make her aware of all
available and effective reasonable accommodations, FEHA also requires that 'in response to
a request for reasonable accommodation by an employee … with a known physical …
disability or known medical condition,' an employer 'engage in a timely, good faith,
interactive process with the employee … to determine effective reasonable
accommodations, if any.' " (*Shirvanyan*, *supra*, 59 Cal.App.5th at pp. 88-89; § 12940,
subd. (n).)

In addition, the duty to reasonably accommodate a disabled employee is a
" ' " 'continuing' " ' " one that is " ' " 'not exhausted by one effort.' " ' " (*Swanson, supra,*

23.

232 Cal.App.4th at p. 969.) "A single failure to reasonably accommodate an employee may give rise to liability, despite other efforts at accommodation." (*Ibid*.)

Finally, "assuming the employee is disabled, the employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263 [also noting that, in general, "the disabled employee is entitled to preferential consideration" relative to workers with greater seniority or qualifications]; *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 243 (same).)

(iii)     Interactive Process—Section 12940(n)

Kaur's third cause of action, failure to engage in an interactive process, arises under section 12940(n).  FEHA makes it " 'an unlawful employment practice … [¶] … [¶] … [f]or an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee … to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee … with a known physical … disability or known medical condition.' (§ 12940, subd. (n).)  Although the interactive process is an informal process designed to identify a reasonable accommodation that will enable the employee to perform his or her job effectively [citation], an employer's failure to properly engage in the process is separate from the failure to reasonably accommodate an employee's disability and gives rise to an independent cause of action." (*Swanson*, *supra*, 232 Cal.App.4th at p. 971.)

"The employee must initiate the process unless his or her disability and the resulting limitations are obvious.  Once initiated, the employer has *a continuous obligation* to engage in the interactive process in good faith." (*Swanson*, *supra*, 232 Cal.App.4th at p. 971, italics added.)  "Both employer and employee have the obligation 'to keep communications open' and neither has 'a right to obstruct the process.'  [Citation.]  'Each party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information [that] is available, or more accessible, to one party." (*Scotch*, *supra*, 173 Cal.App.4th at p. 1014.)

"[T]he fact that an employer *took some steps to work with an employee* to identify reasonable accommodations does not absolve the employer of liability….  If the employer is responsible for a later breakdown in the process, it may be held liable." (*Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at p. 985 (italics added); see *Fjellestad v. Pizza Hut of America, Inc.* (8th Cir. 1999) 188 F.3d 944, 952-953 & fn. 6 [factual dispute existed about whether employer engaged in good faith interactive process even though employer provided some accommodations];[8] *Scotch*, *supra*, 173 Cal.App.4th at p. 1013 [" '[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation.' "].)

" 'Liability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith.' " (*Scotch*, *supra*, 173 Cal.App.4th at p. 1014.)

### C.      *Collateral Estoppel or Issue Preclusion*

As noted, the trial court ruled that Kaur's disability-related discrimination and other claims under FEHA, and retaliation claims under FEHA and Labor Code section 1102.5,

---

**8**      "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354.)

were barred by application of the doctrine of collateral estoppel based on the workers' compensation ALJ's decision.

Collateral estoppel or issue preclusion precludes relitigation of issues argued and decided in prior proceedings or a prior case, even if the second suit raises different causes of action. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (DKN); *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*).)

A prior decision precludes relitigation of issues under the doctrine of collateral estoppel only if five threshold requirements are satisfied. "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido, supra,* 51 Cal.3d at p. 341.) The party asserting collateral estoppel bears the burden of establishing these requirements. (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943.)

### D. *Issue Preclusion Doctrine Does Not Dispose of Kaur's Disability Discrimination, Failure to Provide Reasonable Accommodation, and Failure to Engage in Good Faith Interactive Process Claims Under FEHA*

Foster Farms argues it is entitled to summary adjudication on Kaur's claims for disability discrimination, failure to provide reasonable accommodation, and failure to engage in an interactive process. Foster Farms does not dispute that Kaur had a physical disability protected by FEHA or ground its arguments for summary adjudication and summary judgment on the evidence adduced in the instant matter. Rather, Foster Farms contends that the findings of the workers' compensation ALJ on Kaur's Labor Code section 132a petition have preclusive effect here, under the doctrine of collateral estoppel or issue preclusion, and are dispositive as to Kaur's claims of disability discrimination, failure to

26.

provide reasonable accommodation, and failure to engage in an interactive process. We disagree.

In her petition before the WCAB, Kaur simply alleged that Foster Farms "did intentionally and by means of retribution [discriminate] against [her] and said discrimination was in response and in retribution for [her] claim of injury and her filing of her workers' compensation claim for benefits." The workers' compensation ALJ considered Kaur's claims with reference to Labor Code section 132a standards and undertook a relatively simple and limited analysis. The ALJ noted that Foster Farms "attempted to place [Kaur] into an alternative position since her position was being eliminated" but "[Kaur] refused to even attempt training for the open position of pallet jack operator." The ALJ also addressed Kaur's claim, as reflected in the synopsis of her hearing testimony, that she "did not feel that the offer of pallet jack driver was a legitimate job offer," rather "[s]he felt that Vic Moreno did not expect her to take the job, and that he had offered it to her as an excuse to terminate her." The ALJ noted that "Defendant's actions in attempting to identify an alternative position that was open and available to [Kaur]," that is, the pallet jack driver position, were "necessitated by the realities of doing business," and that Kaur's claim that it "was not a legitimate offer is not credible based upon her failure to even attempt a trial or training in the position before refusing [it]."

The ALJ further observed: "[Kaur] claims that she was treated differently during the down-sizing process due to her industrial injury because most of the other displaced employees were able to be placed into an alternative position. *While she may have been treated differently than … non-injured employees*, [she] has failed to show that she was treated differently than *non-industrially injured employees* were or would have been treated." (Italics added.) The ALJ applied the standards articulated in *Lauher*, *supra*, 30 Cal.4th 1281, for prevailing on a claim under Labor Code section 132a. The ALJ determined Kaur had not shown that any disparate treatment she experienced was triggered by the *industrial* nature of her injury (as opposed to merely the fact of being injured or

27.

disabled).  The ALJ concluded Kaur was not entitled to relief under *Lauher* because she had "failed to show that she was singled out for discriminatory treatment as a result of her *industrial* injury."  Accordingly, the ALJ denied Kaur's petition for Labor Code section 132a benefits.

The ALJ made two ultimate "findings of fact" in her decision:  "1. [Kaur] has failed to show that Defendant discriminated against [her] because of her industrial injury in violation of Labor Code Section 132(a)" and "2. Defendant's discharge of [Kaur] was reasonable and necessitated by the realities of doing business."

Foster Farms' contention that the ALJ's decision disposes of Kaur's disability related FEHA claims is unpersuasive since the ALJ made clear her decision addressed only whether Kaur experienced discrimination on account of the *industrial* nature of her injury.  The ALJ *expressly* stated Kaur may well have been treated differently as compared to non-injured employees, but she had failed to show she had been singled out for discriminatory treatment because of the *industrial nature* of her injury.  Labor Code section 132a does not prohibit employers from requiring "[an] employee to shoulder some of the disadvantages of an industrial injury"; rather, it prohibits them from singling out an employee "*for disadvantageous treatment because of the industrial nature of his injury.*"  (*Lauher*, *supra*, 30 Cal.4th at pp. 1300, 1301.)  FEHA's protections are far broader than those arising from Labor Code section 132a.

Preliminarily we note that Labor Code section 132a proscribes a relatively narrow range of discriminatory conduct by employers, while FEHA targets a much broader range of discriminatory conduct and imposes affirmative duties on employers as to disabled employees.  Labor Code section 132a prohibits discrimination based, inter alia, on the industrial nature of an employee's injury/disability or the filing of a workers' compensation claim by the employee.  Under FEHA, disability is a protected classification, with the cause of the employee's injury/disability rendered irrelevant.

For purposes of her FEHA disability-discrimination claim, Kaur does not allege that Foster Farms discriminated against her because she had suffered an *industrial* injury; rather, she contends that Foster Farms discriminated against her on the basis of disability because, rather than providing her with an available, *reasonable accommodation* for her physical restrictions, it terminated her. Thus, Kaur's FEHA disability discrimination claim is premised on the allegation that she was unlawfully discharged *because of her disability* as Foster Farms could have, but did not, provide her with a reasonable accommodation (i.e., reassignment to a vacant position that was compatible with her disability-related restrictions) that would have allowed her to continue working with the company. The worker's compensation ALJ concluded, in the prior Labor Code 132a proceeding, that Kaur may have been treated differently than non-injured workers during the Foster Farms' restructuring, but she had not shown that she was treated differently on account of the industrial nature of her injury. The issues decided by the worker's compensation ALJ are not "identical" to the issues implicated in Kaur's FEHA disability discrimination claim.

Kaur's FEHA claims for disability discrimination, failure to provide reasonable accommodation, and failure to engage in a good faith interactive process involve entirely different inquiries and issues than her claims under Labor Code section 132a and encompass a whole range of affirmative duties and other requirements applicable to the employer (e.g., continuing obligations to make reasonable accommodations and engage in an interactive process), as well as benefits that accrue to the employee (e.g., preferential treatment with regard to open positions), that have no relevance to a Labor Code section 132a proceeding.

The workers' compensation ALJ found that Foster Farms' offer to move Kaur to a pallet jack position when her yield monitor job was eliminated in the company's restructuring, was "necessitated by the realities of doing business." In contrast, as discussed above, under FEHA an employer has an affirmative duty to make reasonable accommodations (reasonable accommodation includes reassignment of the employee to an appropriate vacant position), unless doing so would produce "undue hardship" to its

29.

operation. Undue hardship is evaluated with reference to several specific and strictly defined criteria. (§ 12940(m)(1); § 12926, subd. (u).) The *duty* to make reasonable accommodations under FEHA is an *ongoing* one and is not satisfied based on a single attempt at a single point in time. Furthermore, under FEHA disabled employees are eligible for preferential treatment when a company fills open positions. Employers must also identify reasonable accommodations by engaging in a good faith interactive process with the employee; the employer's duty to do so is *continuing and ongoing.*

These considerations (ongoing obligations to identify and provide reasonable accommodations if no undue hardship, continuing good faith engagement with the employee, preferential placement of the disabled employee into available positions, etc.) do not apply under Labor Code section 132a and the workers' compensation ALJ who heard Kaur's Labor Code section 132a petition was not required to, and did not, consider or address these issues in making her determinations. While not relevant to a Labor Code section 132a discrimination claim, these considerations were critical to Kaur's FEHA claims given that Moreno testified at deposition that the company only offered Kaur one alternative position, i.e., the pallet jack driver position, did nothing with Kaur's suggestions as to potential jobs that were compatible with her disability, did not consider Kaur for positions that were open at the Belgravia plant, and did not offer Kaur suitable positions such as the PA/ozone monitor and timekeeper positions when these became available later in the process.[9]

In addition, the workers' compensation ALJ was not called upon to decide whether Foster Farms was required to provide a reasonable accommodation to Kaur during the period from 2013 to 2016, after she sustained her wrist injury and returned to work with

---

[9] As part of reasonably accommodating Kaur's injury, Foster Farms could even have, for example, offered her a limited leave of absence until a suitable position, such as the PA/ozone monitor position or timekeeper position, became available, as happened here.

restrictions but remained in her preexisting "yield monitor" position until that position was eliminated.

We conclude the issues decided in the Labor Code section 132a proceeding are not "identical" to the issues implicated in Kaur's FEHA claims for disability discrimination, failure to provide reasonable accommodation, and failure to engage in an interactive process, and therefore the doctrine of issue preclusion is not applicable. (See *Lucido*, *supra*, 51 Cal.3d at p. 341.) Moreover, the issues adjudicated by the workers' compensation ALJ are not dispositive of these FEHA claims as these issues did not constitute a required element of any of the FEHA claims and therefore did not negate an element of any of the FEHA claims. Summary adjudication of Kaur's FEHA claims for disability discrimination, failure to provide reasonable accommodation, and failure to engage in an interactive process on grounds of issue preclusion is therefore not warranted. The trial court erred in granting summary adjudication on these claims on the basis that the workers' compensation ALJ's findings had collateral estoppel effect in the instant matter and were dispositive as to these claims.[10]

Our analysis and conclusion find support in other cases that have considered the precise issue that is before us, including *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143 (*Moorpark*) and *Malais v. Los Angeles City Fire Department* (2007) 150

---

[10] The concurrence suggests that issue preclusion could potentially apply to bar a FEHA disability discrimination action where a WCAB decision addresses issues that are outside the scope of, and therefore not necessarily decided for purposes of, a Labor Code section 132a claim. We disagree. By definition, issue preclusion would not apply in such a case because the matter would not be necessary to the WCAB decision. "In order for the determination of an issue to be given preclusive effect, it must have been necessary to a judgment. This requirement 'prevent[s] the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation.' " (*McMillin Development, Inc. v. Home Buyers Warranty* (1998) 68 Cal.App.4th 896, 906.) It is hard to envision a circumstance in which a determination by the WCAB of the hypothetical issue identified by the concurrence - an issue that is collateral to, and not needed for resolution of, a Labor Code section 132a claim - could satisfy the "necessarily decided" element of collateral estoppel.

Cal.App.4th 350 (*Malais*).) In *Moorpark*, our Supreme Court held that "[Labor Code] section 132a does not provide an exclusive remedy and does not preclude an employee from pursuing FEHA and common law wrongful discharge remedies," and "disapprove[d] any cases that suggest otherwise." (*Moorpark*, *supra*, at p. 1158.) *Moorpark* pointed out that FEHA and Labor Code section 132a are distinct legal regimes without any clear overlap. *Moorpark* noted, for example: "The term 'disability' has a specific meaning in the context of the workers' compensation law that it has in no other context. On the other hand, the FEHA includes detailed definitions of ' "Physical disability" ' and ' "Mental disability" ' that make no reference to workers' compensation law." (*Moorpark* at p. 1158.) Significantly, for our purposes, *Moorpark* emphasized: "Because the standards for establishing disability discrimination may well be different under the FEHA than under [Labor Code] section 132a, a decision in an employee's favor on a [Labor Code] section 132a petition would not establish a FEHA violation." (*Moorpark* at p. 1158.) Under *Moorpark*'s rationale, it would be equally true that denial of an employee's Labor Code section 132a petition would not preclude him or her from establishing a FEHA violation.

In *Malais*, the trial court granted summary judgment in favor of the employer on an employee's FEHA disability claims and, thereafter in a separate proceeding, the WCAB held that the employer engaged in disability discrimination in violation of Labor Code section 132a. On appeal, in the FEHA case, the employee argued that summary judgment should be reversed because the WCAB's finding had collateral estopped effect on his FEHA disability discrimination claim. The appellate court rejected this argument on the ground that " 'the issues in a FEHA action are not identical to the issues in a claim of discrimination under [Labor Code] section 132a,' " and declined to give collateral estoppel effect to a WCAB opinion in the FEHA action. (*Malais*, *supra*, 150 Cal.App.4th at p. 353, fn. 1.) Significantly, the appellate court also held that the WCAB properly rejected the employer's claim, in the WCAB proceeding, that the trial court's grant of summary

judgment on the FEHA claims was res judicata on the Labor Code section 132a claim. (*Ibid.*)

## III. Kaur's Other Claims: Failure to Take All Reasonable Measures to Prevent Discrimination Under FEHA; Retaliation for Asserting FEHA Rights; and Retaliation Under Labor Code Section 1102.5

In addition to granting summary adjudication as to Kaur's disability-related discrimination, failure to provide reasonable accommodation, and failure to engage in an interactive process claims under FEHA, the trial court also granted summary adjudication as to Kaur's other claims: failure to take all reasonable measures to prevent discrimination under FEHA, retaliation for asserting FEHA rights, and retaliation under Labor Code section 1102.5. The trial court's grant of summary adjudication as to these claims was based on the court's determination that the claims were barred by application of the doctrine of collateral estoppel based on the workers' compensation ALJ's decision on Kaur's Labor Code section 132a petition. We conclude the trial court erred in granting summary adjudication as to these claims on this basis.

Foster Farms contends that just as summary adjudication is warranted as to Kaur's disability-related discrimination and related claims, Kaur's remaining claims for failure to take all reasonable measures to prevent discrimination under FEHA, retaliation for asserting FEHA rights, and retaliation under Labor Code section 1102.5 also fail because of the preclusive effect of the WCAB decision.

However, we concluded above that Foster Farms is not entitled to summary adjudication, based on application of the collateral estoppel doctrine, on Kaur's claims for disability discrimination, failure to provide reasonable accommodation, and failure to engage in an interactive process. Foster Farms' argument that summary adjudication is warranted, in light of the WCAB decision, on Kaur's remaining claims for failure to take all reasonable measures to prevent discrimination under FEHA, retaliation for asserting FEHA

33.

rights, and retaliation under Labor Code section 1102.5, is similarly unavailing.[11] Summary adjudication of these claims is reversed.

## IV.     Kaur's Claim of Race/Nationality Discrimination

The trial court granted summary adjudication (in favor of Foster Farms) as to Kaur's cause of action for discrimination based on race/nationality (under section 12940a), on statute of limitations grounds. Kaur challenges the trial court's determination.

The parties agree that Kaur was required to exhaust her administrative remedies by filing an administrative complaint with the DFEH within one year following the occurrence of the alleged unlawful conduct at issue. (See former Gov. Code, 12960, subd. (d) (Stats. 2005, ch. 642, § 1) ["(d) No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred."]; *Acuna v. San Diego Gas & Electric Co*. (2013) 217 Cal.App.4th 1402, 1412.) Kaur filed her DFEH complaint on February 22, 2017.

"To exhaust his or her administrative remedies as to a particular act made unlawful by the [FEHA], the claimant must specify that act in the administrative complaint, even if the [administrative] complaint does specify other cognizable wrongful acts." (*Martin v. Lockheed Missiles & Space Co*. (1994) 29 Cal.App.4th 1718, 1724.) "[I]n the context of the [FEHA] … '[t]he failure to exhaust an administrative remedy is a jurisdictional, not a procedural, defect,' and thus that failure to exhaust administrative remedies is a ground for a defense summary judgment." (*Ibid*.)

Kaur testified at deposition that three Foster Farms employees discriminated against her based on her race/national origin: Rosa, Supervisor Cheng Vang, and Supervisor Pang Xiong (Kaur is of Indian origin and Rosa, Vang, and Xiong are of Southeast Asian origin). Kaur testified that Rosa refused to give Kaur a new pair of slip-resistant boots on April 24,

_____

[11]     Foster Farms' argument is based on the erroneous premise that the WCAB decision had established Kaur was not wrongfully terminated on a discriminatory basis and therefore her claims for failure to prevent discrimination under FEHA as well as retaliation necessarily fail.

34.

2013, the day that Kaur slipped and fell on the wet floor of the production facility. Kaur believed Rosa refused Kaur's requests for supplies because Kaur is Indian.

As for Supervisor Pang Xiong, Kaur testified at deposition that he, along with Supervisor Cheng Vang, terminated her on December 27, 2013, for allegedly violating the company's lunch break policy. Kaur filed a grievance through her union, taking issue with her termination; she was reinstated in March 2014.

With respect to Supervisor Vang, Kaur testified at deposition that he was her direct supervisor and that he ignored her requests for accommodation and would not listen to her, from the time she sustained her wrist injury in 2013, until her termination in 2016.

Since the acts attributed to Rosa and Xiong occurred in 2013 and Kaur did not file her DFEH complaint until 2017, we conclude Kaur did not timely exhaust her administrative remedies as to the alleged wrongful conduct by Rosa and Xiong. Therefore, the trial court properly granted summary adjudication as to any claim of race/nationality discrimination based on their conduct.

As for alleged wrongful acts by Vang, when Kaur returned to work in June 2013, after sustaining her wrist injury, and complained of disability-related difficulties in doing her job, Vang told her, "If you can't do the job, you should just quit." Vang was also involved in the decision to terminate Kaur for an alleged lunch break violation in December 2013; Kaur won reinstatement. Kaur stated at deposition that Vang continually ignored her requests for accommodation of her disability from April 2013, when she sustained her wrist injury, until July 2016, when she was terminated. Kaur alleged that Vang treated her badly because she was Indian. Kaur also described tensions between the Indian and Southeast Asian employees at the plant.

Kaur has timely exhausted her administrative remedies as to the alleged wrongful conduct by Vang, for purposes of her claim of race/nationality discrimination. Accordingly, the trial court erroneously granted summary adjudication as to any claim of race/nationality discrimination based on Vang's conduct.

35.

As for the alleged wrongful acts of Rosa and Xiong, we are not persuaded by Kaur's undeveloped contention that the alleged wrongful conduct of Rosa and Xiong is brought within the limitations period by application of the "continuing violation" doctrine. (See *Richards v. CH2M Hill, Inc*. (2001) 26 Cal.4th 798, 812.)

In conclusion, we note we need not address Kaur's remaining claims—that is, her contentions that (1) the trial court erred in taking judicial notice of various records from the WCAB proceeding on her Labor Code section 132a petition, and (2) the doctrines of res judicata and collateral estoppel should not be applied in this matter for public policy reasons—as our resolution of the merits of Kaur's other claims has rendered these issues moot.

## DISPOSITION

The judgment is reversed. Summary adjudication of claims of race/nationality discrimination based on the alleged acts of Rosa and Pang Xiong is affirmed. Summary adjudication of all other claims is reversed. The case is remanded for further proceedings. Kaur is awarded costs on appeal.

SMITH, J.

I CONCUR:

FRANSON, J.

36.

POOCHIGIAN, Acting P. J., Concurring.

I concur in the judgment but write separately to emphasize the narrowness of today's decision. The majority's resolution of the disability discrimination issue rests on the correct but unremarkable holding that when a factfinder expressly declines to reach a factual issue, their finding has no collateral estoppel effect as to the unreached factual issue. It does not stand for the broad proposition that factual findings by an administrative law judge (ALJ) on a claim under Labor Code section 132a[1] can *never* supply the basis for issue preclusion in a subsequent Fair Employment and Housing Act (FEHA) (Gov. Code, §§ 12900 et seq.) action. Even if it purported to do so, the binding authority of an appellate decision is only coextensive with the facts presented by the case. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734–735.)

The reason an across-the-board rule will not work in the context of issue preclusion is best explained by contrasting it with claim preclusion. Claim preclusion and issue preclusion operate on different levels of abstraction and therefore have different units of analysis. Claim preclusion concerns *causes of action*. In contrast, factual issue preclusion does not involve "ultimate issues" but rather zooms in to the *individual factual allegations* supporting a cause of action.[2] (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342; see *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)

The majority's comparison of the elements and legal nuances of section 132a claims and how they differ from a FEHA disability discrimination claim is a cogent explanation for why claim preclusion does not apply. (See maj. opn., *ante*, at pp. 30–31.) But it does not speak to factual issue preclusion, which is concerned not with identity of

---

[1] All further statutory references are to the Labor Code unless otherwise stated.

[2] Issue preclusion can also apply to issues of *law* litigated and determined by final judgment. (*Lumpkin v. Jordan* (1996) 49 Cal.App.4th 1223, 1229–1230.) Here, however, respondent is invoking collateral estoppel as to an issue of fact. Consequently, in this opinion, I discuss issue preclusion as it pertains to issues of fact, rather than issues of law.

*causes of action*, but rather identity of a *factual issue* in each of two different proceedings. The question is whether " ' " 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues … are the same." ' " (*In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 537; see *Key v. Tyler* (2019) 34 Cal.App.5th 505, 534.)

This is why we cannot state a blanket rule about whether an ALJ's factual findings on a section 132a claim will always or never have preclusive effect in a FEHA disability discrimination lawsuit. Its application depends on (1) what factual issues were decided in the section 132a claim and (2) what factual allegations the plaintiff relies on to establish the legal elements of a subsequent FEHA cause of action.

Sometimes, a section 132a claim will be resolved by a factual finding that is irrelevant to, or at least not dispositive of, a FEHA disability discrimination claim. In that circumstance, the parties could not rely on issue preclusion to obtain summary judgment in the FEHA suit. For example, the ALJ's finding in the present case expressly left open the possibility the employer treated the employee differently due to her injury. Thus, the ALJ did not make a finding as to the factual issue the employer presently claims was resolved in its favor: whether the employee was subjected to an adverse employment action "because of" her disability.

But there are a wide variety of factual issues which may prove dispositive in a section 132a case, depending on the specific factual allegations relied upon by the parties to prove or disprove the elements of section 132a. In cases where a factual finding from a section 132a proceeding negates the factual assertions on which the employee later relies to establish a necessary element of a subsequent FEHA cause of action, issue preclusion would apply.[3]

---

[3] Assuming the other elements of issue preclusion are present.

Consider a hypothetical where an employee claims she was demoted because of a disability, which was initially caused by an industrial injury. The employer may seek to disprove the disadvantageous treatment element of a section 132a claim by showing the demotion was entirely a consequence of poor job performance unrelated to the disability. If the ALJ indeed finds the demotion was entirely a consequence of poor job performance (and not the disability), it would have preclusive effect as to a subsequent FEHA disability discrimination lawsuit *based solely on the same factual assertion* that the employee was demoted because of the disability.**4**

_____

**4** The majority suggests this finding would be "outside the scope" of a section 132a claim and therefore, "not necessary" to the decision. Not so.

To prevail on a disability discrimination claim under section 132a, the employee must make two showings. First, it must be shown the employer caused detriment to the employee as the result of disability that happened to have been caused by an industrial injury. (See *Smith v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 1104.) All that matters under this element is whether the detrimental treatment was imposed "because of" such a disability. (See *County of Santa Barbara v. Workers' Comp. Appeals Bd.* (1980) 109 Cal.App.3d 211, 215.) This is satisfied even where an employer discriminates against all injured employees, not just those whose injuries were industrial. In other words, it is irrelevant whether the detrimental treatment was directed at the industrial nature of the injury. (See *id.* at pp. 215–216 & fn. 2.)

In *Department of Rehabilitation v. Workers' Comp. Appeals Bd. (Lauher)* (2003) 30 Cal.4th 1281, "the California Supreme Court *added* a *new* element to the prima facie case of discrimination which a worker must establish to show a violation of section 132a." (*Gelson's Markets v. Workers' Comp. Appeals Bd.* (2009) 179 Cal.App.4th 201, 209, italics added.) In addition to the first element described above, employees must also show the employer singled the employee out for disadvantageous treatment because of the "industrial nature" of the injury. (See *Lauher*, at p. 1301, italics omitted.)

After *Lauher*, an employee must show both (1) detriment and (2) differential treatment. (See *County of San Luis Obispo v. Workers' Comp. Appeals Bd.* (2005) 133 Cal.App.4th 641, 648; see also *Gelson's Markets v. Workers' Comp. Appeals Bd.*, *supra*, 179 Cal.App.4th at p. 210.)

Because of its multiple elements, a section 132a claim may be defeated in a variety of ways. Here, the ALJ found the element established by *Lauher* had not been proven – i.e., that the employee had not been singled out for discriminatory treatment due to the industrial nature of her injury. (Maj. opn., *ante*, at p. 18.)

But in other cases, a section 132a claim might be defeated by a factual finding on the first element. For example, an ALJ might find that the alleged detrimental treatment

3.

With these observations, I concur in the judgment.

POOCHIGIAN, Acting P. J.

---

(e.g., demotion, termination) was not "the result of" the employee's disability/injury, but rather their poor job performance or some other nondiscriminatory consideration. Indeed, the alleged causal connection between the disability/protected activity and the detrimental treatment is often a central battleground in these cases. (E.g., *Barns v. Workers' Comp. Appeals Bd.* (1989) 216 Cal.App.3d 524, 531; *Smith v. Workers' Comp. Appeals Bd.*, *supra*, 152 Cal.App.3d at p. 1110.)  An ALJ's resolution of such a factual dispute would be completely germane to the ultimate disposition of a claim under section 132a. It certainly could not be said such a finding is "entirely unnecessary" (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 482) to resolving the section 132a claim.

4.